**CASTLEBERRY v. FROST—JOHNSON LUM-
BER CO.**     (No. 617—4339.)

(Commission of Appeals of Texas, Section B.
April 28, 1926.)

1. **Master and servant** ⊜351—**Injured em-
ployé's common-law right of action for exem-
plary "damages" for gross negligence held
abrogated by statute (Workmen's Compensa-
tion Act 1917 [Vernon's Ann. Civ. St. Supp.
1918, arts. 5246—3, 5246—4, 5246—7]).**

Injured employé's common-law right to re-
cover exemplary damages arising from employ-
er's, gross negligence was abrogated, express-
ly and by necessary implication, by Workmen's
Compensation Act 1917 (Vernon's Ann. Civ.
St. Supp. 1918, arts. 5246—3, 5246—4, 5246—7);
"damages," unless limited, as is not done in
such act, covering exemplary as well as actual
damages.

[Ed. Note.—For other definitions, see Words
and Phrases, First and Second Series, Damage
—Damages.]

2. **Master and servant** ⊜351—**Employé's com-
mon-law action for exemplary damages ex-
cluded by Compensation Act (Workmen's
Compensation Act 1917 [Vernon's Ann. Civ.
St. Supp. 1918, art. 5246—7]).**

Mention of one being exclusion of other, ex-
press provision of Workmen's Compensation
Act 1917 (Vernon's Ann. Civ. St. Supp. 1918,
art. 5246—7) saving right of recovery of ex-
emplary damages by surviving spouse or heirs
of employé, killed because of gross negligence,
excludes recovery of such damages by em-
ployé for injuries so caused.

3. **Master and servant** ⊜348 — **Workmen's
Compensation Act construed by Legislature
as not authorizing recovery of exemplary dam-
ages by employé (Workmen's Compensation
Act 1917 [Vernon's Ann. Civ. St. Supp. 1918,
art. 5246—7]; Rev. St. 1925, art. 8306, § 5).**

Provision of Workmen's Compensation Act
1917 (Vernon's Ann. Civ. St. Supp. 1918, art.
5246—7) that no award, ruling, or finding of In-
dustrial Accident Board shall be pleaded or in-
troduced in evidence in suit by employé or his
legal heirs or representatives for exemplary
damages, having been eliminated by codifiers,
whose draft was enacted by Legislature (Rev.
St. 1925, art. 8306, § 5), on observing that it
was being contended that injured employé, as
well as surviving spouse or heirs of deceased
employé, could recover exemplary damages
thereunder, Legislature has construed such pro-
vision as not authorizing recovery of such dam-
ages by employé.

4. **Constitutional law** ⊜70(3)—**Court is not
concerned with wisdom or possible injustice
of act abrogating injured employé's right to
recover exemplary damages for gross negli-
gence (Workmen's Compensation Act 1917
[Vernon's Ann. Civ. St. Supp. 1918, arts.
5246—3, 5246—4, 5246—7]).**

Court is not concerned with wisdom or pos-
sible injustice of Workmen's Compensation Act
1917 (Vernon's Ann. Civ. St. Supp. 1918, arts.
5246—3, 5246—4, 5246—7) abrogating injured
employé's common-law right to recover ex-

emplary damages from employer for gross neg-
ligence.

5. **Master and servant** ⊜352—**Employé in-
jured by employer's willful act may waive
claim for compensation and sue for both ac-
tual and exemplary damages (Workmen's
Compensation Act 1917 [Vernon's Ann. Civ.
St. Supp. 1918, arts. 5246—3, 5246—4,
5246—7]).**

Employé injured because of employer's will-
ful act or omission is not forced to accept inade-
quate compensation because of Workmen's
Compensation Act 1917 (Vernon's Ann. Civ.
St. Supp. 1918, arts. 5246—3, 5246—4, 5246—7)
abrogating common-law right to recover ex-
emplary damages, but may waive claim for com-
pensation and sue for both actual and ex-
emplary damages, though he cannot recover
exemplary damages for gross negligence where
element of intention is lacking.

6. **Master and servant** ⊜351—**Compensation
Act saved right of surviving spouse and heirs
to recover exemplary damages for employé's
death from gross negligence, while abrogat-
ing injured employé's right to such recovery
(Const. art. 16, § 26; Workmen's Compensa-
tion Act 1917 [Vernon's Ann. Civ. St. Supp.
1918, arts. 5246—3, 5246—4, 5246—7]).**

Workmen's Compensation Act 1917 (Ver-
non's Ann. Civ. St. Supp. 1918, art. 5246—7),
saving right of surviving spouse or heirs to re-
cover exemplary damages for employé's death
from willful act, omission, or gross negligence,
while articles 5246—3 and 5246—4 abrogate
right of injured employé to recover such dam-
ages for gross negligence, was enacted because
of Const. art. 16, § 26, declaring every one
committing homicide through such act, omission,
or negligence responsible in exemplary dam-
ages to surviving spouse and heirs.

7. **Master and servant** ⊜347—**Legislature may
modify common-law provision for exemplary
damages as provided in Compensation Act
(Const. art. 16, § 26; Workmen's Compensa-
tion Act 1917 [Vernon's Ann. Civ. St. Supp.
1918, art. 5246—7]).**

Under common law, claim for exemplary
damages lapsed with death of injured party, but
Legislature, by statute alone, may adopt, reject,
or modify any common-law provision, as by
Workmen's Compensation Act 1917 (Vernon's
Ann. Civ. St. Supp. 1918, art. 5246—7) saving
right of surviving spouse and heirs, under
Const. art. 16, § 26, to recover exemplary
damages for employé's death from willful act,
omission, or gross negligence.

Error to Court of Civil Appeals of Ninth
Supreme Judicial District.

Action by J. S. Castleberry against the
Frost-Johnson Lumber Company. Judgment
for defendant was affirmed by the Court of
Civil Appeals (268 S. W. 771), and plaintiff
brings error. Affirmed.

Seale & Denman, of Nacogdoches, and A. D.
Lipscomb, of Beaumont, for plaintiff in error.

Harry P. Lawther, of Dallas, amicus curiæ.

Baker, Botts, Parker & Garwood, of Hous-
ton, for defendant in error.

⊜For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes

POWELL, P. J. For a statement of the nature and result of this case, we quote from the opinion of the Court of Civil Appeals as follows:

"Appellee was a subscriber under our Workmen's Compensation Act. * * * Appellant was one of its employés, and, while engaged in the discharge of his duties to appellee, received painful and severe injuries in the course of his employment, resulting in the loss of his foot. In due course of administration he was awarded compensation. He instituted this suit against his employer on allegations of gross negligence to recover exemplary damages. The trial court sustained a general demurrer to his petition. As in our judgment the petition stated a cause of action at common law, it was not subject to a general demurrer on the insufficiency of its allegations. Therefore we pretermit a review of the petition and of appellee's counter propositions on its construction.

"This leaves in the case only one question: Does our Workmen's Compensation Act abrogate an injured employé's common-law action against his employer for exemplary damages sounding in gross negligence? Both parties assert that this is a question of first impression under our act. Appellant must look to the act of 1917 * * * for his recovery. Articles 5246—3, 5246—4, and 5246—7, are as follows:

"(3) 'The employés of a subscriber shall have no right of action against their employer for damages for personal injuries, and the representatives and beneficiaries of deceased employés shall have no right of action against such subscribing employer for damages for injuries resulting in death, but such employés and their representatives and beneficiaries shall look for compensation solely to the association, as the same is hereinafter provided for; provided that all compensation allowed under the succeeding sections herein shall be exempt from garnishment, attachment, judgment and all other suits or claims, and no such right of action and no such compensation and no part thereof or of either shall be assignable, except as otherwise herein provided, and any attempt to assign the same shall be void.'

"(4) 'An employé of a subscriber shall be held to have waived his right of action at common law or under any statute of this state to recover damages for injuries sustained in the course of his employment if he shall not have given his employer, at the time of his contract of hire, notice in writing that he claimed said right or if the contract of hire was made before the employer became a subscriber, if the employé shall not have given the said notice within five (5) days of notice of such subscription. An employé who has given notice to his employer that he claimed his right of action at common law or under any statute may thereafter waive such claim by notice in writing, which shall take effect five (5) days after its delivery to his employer or his agent: provided, further, that any employé of a subscriber who has not waived his right of action at common law or under any statute to recover damages for injury sustained in the course of his employment, as above provided in this section, shall, as well as his legal beneficiaries and representatives have his or their cause of action for such injuries as now exist by the common law and statutes of this state, which action shall be subject to all defenses under the common law and statutes of this state.'

"(7) 'Nothing in this act shall be taken or held to prohibit the recovery of exemplary damages by the surviving husband, wife, heirs of his or her body, or such of them as there may be of any deceased employé whose death is occasioned by homicide from the willful act or omission or gross negligence of any person, firm or corporation from the employer of such employé at the time of the injury causing the death of the latter. Provided, that in any suit so brought for exemplary damages the trial shall be de novo, and no presumption shall exist that any award, ruling or finding of the Industrial Accident Board was correct; and in such suit brought by the employé or his legal heirs or representatives against such association or employer, such award, ruling or finding shall neither be pleaded nor introduced in evidence.' "

[1] The Court of Civil Appeals then proceeds to determine this one question in a very able opinion by Associate Justice Walker. The court affirmed the judgment of the district court, and held that the right at common law of an injured employé to recover exemplary damages arising from gross negligence of his employer was by express legislation as well as necessary implication abrogated. See 268 S. W. 771. We think both of the lower courts have correctly so held.

[2] In so far as the opinion of the Court of Civil Appeals treats this subject, we feel we can add nothing worth while. We dislike to merely repeat what that court says, so we will merely briefly allude to some of its language. The statute not only once, but twice, in slightly different language, expressly states that an employé shall have no right of action at common law for damages where he has accepted compensation under the act. Such an acceptance on his part is, by express provision of the statute, a waiver of such right. As stated by the Court of Civil Appeals, the word "damages," unless limited, as is not done here, covers exemplary as well as actual damages. The law dictionaries and higher courts so hold. And it is absolutely conclusive that the Legislature, in passing this act, used that word in its usual and broad sense. Otherwise there would have been absolutely no necessity for making any exception in favor of exemplary damages in case of the death of an employé. Counsel for plaintiff in error contended that the word "damages" had reference only to actual damages. If that be true, as already indicated, there was no necessity for inserting the exception just mentioned. It is conclusive, as we see it, that the Legislature knew what the word "damages" meant, and that the statute itself would not permit recovery of exemplary damages by any one unless it was so expressly provided in the same statute. And, having expressly provided for exemplary damages of one kind, it must be held under the rules of construction that other kinds were excluded. The Court of Civil Appeals quotes

the Latin maxim which means that the mention of one is the exclusion of the other. And so it is. There is no escape from this, as we view it. We think the legislative intent is perfectly clear so far as aforesaid provisions are concerned.

[3] As held by the Court of Civil Appeals, there was in the act of 1917 but one statement that could possibly cast any doubt upon this construction, and that is the only clause in the law urged by counsel for plaintiff in error here. That part of the act of 1917, being a part of article 5246—7 already hereinabove quoted, is as follows:

"And in such suit brought by the employé or his legal heirs or representatives against such association or employer, such award, ruling or finding shall neither be pleaded nor introduced in evidence."

We think the Court of Civil Appeals proceeds to correctly construe this last-quoted clause. We call attention to the fact that, since the Court of Civil Appeals wrote its opinion in this case, the Legislature of our state has itself construed this most troublesome, conflicting, and possibly meaningless language. The codifiers were appointed to iron out such provisions wherever found in our civil statutes and make them harmonize. Consequently, they rewrote article 5246—7 (now section 5 of article 8306 of the Revised Statutes of 1925) so as to read as follows:

"Sec. 5. Nothing in this law shall be taken or held to prohibit the recovery of exemplary damages by the surviving husband, wife, heirs of his or her body, or such of them as there may be of any deceased employé whose death is occasioned by homicide from the willful act or omission or gross negligence of any person, firm or corporation from the employer of such employé at the time of the injury causing the death of the latter. In any suit so brought for exemplary damages the trial shall be de novo, and no presumption shall exist that any award, ruling or finding of the Industrial Accident Board was correct. In any such suit, such award, ruling, or finding shall neither be pleaded nor offered in evidence."

As so drafted by the codifiers, it was enacted by the Legislature. Therefore, since September 1, 1925, the statute does not contain the only provision which forms the basis of the brief for plaintiff in error here. Consequently, it cannot be doubted that, under the present law, Castleberry's suit must fail. His cause of action was the first in Texas to reach an appellate court. As soon as it was observed by the codifiers that it was being contended that, because of certain language contained in the statute, an employé could recover exemplary damages, that language was eliminated. This is quite persuasive that such an intention had always been that of the lawmakers. Otherwise, the language, expressive of legislative policy, would not only have beeen retained, but rewritten so as to make it intelligible.

[4, 5] Since we think it clear that the Legislature intended to abrogate exemplary damages to an injured employé, we are really not concerned with the wisdom or possible injustice which may flow from such legislation. But we do desire to clear up an impression which arises from a quotation in the opinion of the Court of Civil Appeals from Gammel's Edition of the Workmen's Compensation Laws of Texas, edited by Mr. Huson of this state. The part of the quotation to which we allude, page 143 of his work, reads as follows:

"And certainly this conclusion must be the reasonable one, in view of the fact that to hold otherwise would license gross and wanton negligence on the part of a selfish or irresponsible employer, or even permit him to inflict willful injuries upon the employé, which though serious, might not result in death, and the only recourse the injured employé would have in such a case would be to accept compensation under the act which for most purposes is meager and inadequate."

In the first place, it occurs to us that the Penal Code, which is still in effect in Texas, may serve to act as a deterrent to those men who are afflicted with a desire to intentionally injure their fellow men. But, aside from this, we think the author of this quotation shows a lack of familiarity with the decisions of the Supreme Court of our state. Compensation legislation originated in Texas in 1913. The constitutionality of that first act (Laws 33d Leg. [1913], c. 179 [Vernon's Sayles' Ann. Civ. St. 1914, arts. 5246h–5246zzzz]), was vigorously assailed. Our Supreme Court, in a very able and exhaustive opinion by Chief Justice Phillips, upheld the act. See Middleton v. Power & Light Co., 185 S. W. 556, 108 Tex. 96. The learned Chief Justice went fully into this character of legislation, its purposes, objects, etc. He also decided the character of injuries embraced within the act. In doing so, he said:

"Here the character of injuries, or wrongs, dealt with by the act becomes important. Notwithstanding the breadth of some of its terms, its evident purpose was to confine its operation to only accidental injuries, and its scope is to be so limited. Its emergency clause declares its aim to be the protection by an adequate law of the rights of employés injured in 'industrial accidents,' and the beneficiaries of such employés as may be killed 'in such accidents.' The Bill of Rights (section 13, art. 1 of the Constitution) provides that 'every person for any injury done him, in his lands, goods, person or reputation, shall have his remedy by due course of law'; that is, the right of redress in the courts of the land in accordance with the law's administration. It is, therefore, not to be doubted that the Legislature is without the power to deny the citizen the right to resort to the courts for the redress of any intentional injury to his person by another. Such a cause of action may be said to be protected by the Constitution and could not be taken away; nor could the use of the courts for its enforce-

ment be destroyed. This act does not affect the right of redress for that class of wrongs. The injuries, or wrongs, with which it deals are accidental injuries or wrongs. What we know and denominate as the cause of action arising from an accidental injury is purely the creation of the common law. It is a common-law liability founded upon the common-law doctrine of negligence; and, but for the rule of the common law—sometimes also expressed in statutes —there would be no liability for such an injury, and hence no cause of action for it."

We quote again from the Chief Justice as follows:

"The effect of the act upon the rights of employés cannot be properly weighed or determined without a due consideration of its aim and policy in their interest. Its theory, as it concerns them, is that the plan of compensation it provides for their injuries suffered in the course of their employment is more advantageous than a suit for damages. In the latter, the employé is compelled to assume the burden of establishing that his injury was caused by the employer's negligence or the negligence of a servant for which the employer is responsible. His suit fails if it is subject to any of the common-law defenses; that is, if his own negligence was the proximate cause of the injury, or if the injury was due to a risk he assumed, or the negligence of a fellow servant. By the act a fixed compensation is payable to him upon the mere happening of any injury in the course of the employment, or to his beneficiaries in the event of his death from the injury, without reference to any negligence on the part of the employer or his servants, and without regard to defenses available to the employer at common law. With this as the evident spirit and design of the act in the employé's interest, his entering the service of an employer who in his business pursuit is governed by the act, or his remaining, after notice duly given, in the service of an employer who has adopted its plan of compensation and become subject to it, is made to operate as a waiver of *any cause of action against the employer on account of any injury suffered in the course of the employment, except for exemplary damages in behalf of a surviving husband, wife, or heirs,* as already noted." (Italics ours.)

Not being satisfied with the decision of our state court upon this question, the cause was taken to the Supreme Court of the United States, where the act was again upheld, and the decision of our Supreme Court affirmed. The opinion of the federal court (39 S. Ct. 228, 249 U. S. 155, 63 L. Ed. 527) was written by Mr. Justice Pitney, from which we quote as follows:

"The act creates an employers' insurance association, to which any employer of labor in the state, with exceptions to be mentioned, may become a subscriber; and out of the funds of this association, derived from premiums on policies of liability insurance issued by it to subscribing members and assessments authorized against them if necessary, the compensation provided by the act as due on account of personal injuries sustained by their employés, or on account of death resulting from such injuries, is

to be paid. This is a stated compensation, fixed with relation to the employé's average weekly wages, and accrues to him absolutely when he suffers a personal injury in the course of his employment incapacitating him from earning wages for as long a period as one week, or to his representatives or beneficiaries in the event of his death from such injury, whether or not it be due to the negligence of the employer or his servants or agents. Such compensation is the statutory substitute *for damages otherwise recoverable* because of injuries suffered by an employé, or his death occasioned by such injuries, when due to the negligence of the employer or his servants; *it being declared that the employé of a subscribing employer, or his representatives or beneficiaries in case of his death, shall have no cause of action against the employer for damages except where a death is caused by the willful act or omission or gross negligence of the employer."* (Italics ours.)

These two great justices, construing the act of 1913, re-enacted in this respect in 1925, hold that the injured employé waives all claims for damages, and that his heirs and representatives do likewise, except where death occurs as already stated by us.

And, from our first quotation from the Chief Justice of our state, it is absolutely clear that an injured employé, who thinks his injury was due to a "willful act or omission" of his employer, is not forced to accept the inadequate compensation provided by the act. He may still resort to the courts under his common-law rights. He can waive his claim for compensation and sue for both actual and exemplary damages. Counsel for the Texas Employers' Insurance Association, as amicus curiæ, present a brief here conceding this to be the ruling by our own Supreme Court. And, in view of that holding, employés in Texas have just as substantial rights as do those in the many other states whose acts we have examined. In other words, as we construe our own compensation statutes, an injured employé does not have the right to exemplary damages arising from gross negligence, where the element of intention in such negligence is lacking. But, in this respect, we find our statute like those of other states. Counsel for Castleberry do not cite the acts of any states which permit any such exemplary damages. We have made considerable independent investigation for ourselves and do not find any such provision. We do find many states which penalize employers in the nature of exemplary damages for willful or intentional acts or omissions. But they do not do so for ordinary gross negligence.

In the state of Washington, the statute reads:

"If injury or death results to a workman from the deliberate intention of his employer to produce such injury or death, the workman, * * * shall have the privilege to take under this act and also have cause of action against the employer." Laws 1911, p. 361, § 6.

It seems that the state of Oregon has a similar statute (Laws 1913, p. 204, § 22). In the case of Jenkins v. Manufacturing Co., 155 P. 703, 79 Or. 448, the Supreme Court of the latter state had this to say:

"We think by the words 'deliberate intention to produce the injury' that the lawmakers meant to imply that the employer must have determined to injure an employé and used some means appropriate to that end; that there must be a specific intent, and not merely carelessness or negligence, however gross."

In the case of Delthony v. Standard Furniture Co., 205 P. 379, 119 Wash. 298, the Supreme Court of Washington approves the Oregon holding.

As showing the provision of the Massachusetts act (Laws 1911, c. 751, pt. 2, § 3), we quote as follows from volume 1 of Honnold on Workmen's Compensation, § 184, p. 669:

"The Massachusetts act provides that, 'if the employé is injured by reason of the serious and willful misconduct of a subscriber or of any person regularly intrusted with and exercising the powers of superintendence, the amounts of compensation * * * shall be doubled.' Under this provision it has been held that serious and willful misconduct on the part of the employer is not established by failure to provide safety devices, by poor working conditions permitted by him, by failure to supply a foreman, or proper tools, or sufficient workmen, where their presence would not have prevented the accident; nor is such misconduct shown by the exercise of poor judgment on the part of a foreman. The breaking of a wire rope, allowing a heavy heater coil to fall upon the workman, has been held not to show serious and willful misconduct of the employer."

We could quote others, but they all show infliction of additional penalties where the injury is willful or intentional.

Again, many of the states have provisions to the effect that the employé himself cannot recover compensation in any case where guilty of "willful misconduct." In other words, many states are fair and impartial alike to employer and employé. They penalize either where injury results from willful acts or omissions. But we do not find the rule to be the same as to ordinary gross negligence.

The courts of all the states, so far as we have been able to ascertain, seem to hold that all rights of action at common law are abrogated by these Compensation Acts except where expressly provided otherwise; that is to say, some of the states make definite exceptions in certain respects. But we have found none which authorizes the recovery of exemplary damages by an injured employé arising out of gross negligence. That the remedies in these acts are generally held to be exclusive, see Peet v. Mills, 136 P. 685, 76 Wash. 437, L. R. A. 1916A, 358, Ann. Cas. 1915D, 154; Railway Co. v. Meese, 36 S. Ct. 223, 239 U. S. 614, 60 L. Ed. 467; Connors v. Semet-Solvay Co., 159 N. Y. S. 431, 94 Misc. Rep. 405; Adams v. Biscuit Co., 162 P. 938, 63 Okl. 52; Shanahan v. Engineering Co., 114 N. E. 795, 219 N. Y. 469; Shade v. Lime & Portland Cement Co., 144 P. 249, 93 Kan. 257; Pendar v. Machine Co., 87 A. 1, 35 R. I. 321, L. R. A. 1916A, 428. In the case of Adams v. Biscuit Co., supra, the Supreme Court of Oklahoma had before it a case where an employé was not only totally disabled permanently to do any work, but he was also seriously disfigured. In addition to his compensation, he sought recovery for additional damages for the disfigurement. In denying this recovery, the court held that the law was meant to be exclusive in cases of injury in employment, not dividing up injuries and forms of relief, but abolishing the right of action in the courts.

[6, 7] It may be asked why the Legislature of this state made a distinction between death cases and those not resulting in death. It might be said that there is no more reason why a man's heirs should recover exemplary damages after his death than that he himself should do so if injured in the same way. And there would seem to be some merit in such a contention. It is perfectly apparent to us why the Legislature gave the right to any one to recover exemplary damages arising from gross negligence. It was for the all-compelling reason that it would be futile to fail to give recognition to section 26 of article 16 of our state Constitution, which reads as follows:

"Every person, corporation or company, that may commit a homicide, through willful act or omission, or gross neglect, shall be responsible, in exemplary damages, to the surviving husband, widow, heirs of his or her body, or such of them as there may be, without regard to any criminal proceeding that may or may not be had in relation to the homicide."

We believe our Legislature, like the lawmakers of other states, would have made no distinction between ordinary and gross negligence, as affecting compensation, either in case of death or mere injury, but for our constitutional provision which was written, of course, long before Compensation Acts were ever dreamed of in Texas.

But there was some reason which appealed to the people themselves, in adopting their Constitution, as sufficient to make a difference between death claims and others. It is true, under the common law, claims for exemplary damages lapsed with the death of the injured party. But our Legislature, by statute alone, has the right to adopt, reject, or modify any provision of the common law. The Supreme Court so held in the Middleton Case. In fact, such a holding was the very basis upon which the constitutionality of the act was upheld. The lawmakers themselves could have amended the common law so as to have a cause of action for exemplary damages survive the death of the injured party. The peo-

ple were willing to leave most of the common-law rules and rights connected therewith and having reference thereto in the hands of the Legislature itself. But it was not so with reference to cases where death resulted. They evidently attached more importance to protection of widows and orphans than to the living who are merely injured. When it came to death cases, they left no' discretion in the Legislature.

As stated, we are convinced that the Legislature did not desire to burden industries, and indirectly consumers generally, with the added cost of allowing exemplary damages to employés suffering injuries from gross negligence. The great majority of claims under the Compensation Act arise from injuries not resulting in death. If employers are to be subject, in all cases, to suits for exemplary damages, as at common law, where gross negligence is alleged, then they must carry insurance to protect such claims as well as injuries arising from ordinary negligence. And, there being no definite limit to recoveries in the nature of exemplary damages insurance company premiums would be tremendously increased. Of course, manufacturers are entitled to a fair return upon their products, and this added insurance expense must be passed on to the public in the nature of increased prices of the products consumed. We are not so sure that the Legislature should have added .this extra burden upon the people. In fact, such action might have practically destroyed the Compensation Act itself.

The line of distinction between gross and ordinary negligence, especially where the element of intention is eliminated from the former, is quite dim. In all probability, where injuries are due to any negligence of the employer, claimants would accept actual damages in the nature of compensation under the act and then proceed to sue for exemplary damages for gross negligence.

It is true that some hardship results, from our construction, to those who are injured through gross negligence. But the same thing is true of those who are the victims of ordinary negligence. The basic theory of legislation of this kind is that some people suffer hardships. For instance, 60 per cent. of a man's average wages is not adequate or full compensation. This is perfectly apparent. No one could argue that it is adequate. What could be the justification for paying a man only three-fifths of what he could make? But it was found that only about 20 per cent. of injured employés could recover under the common-law rules; 80 per cent. of them had no cause of action at law and suffered. Therefore the adequate recovery of the 20 per cent. was lessened in order that the 80 per cent. might not become helpless and therefore be charges upon the public. It is but another illustration of the few suffering in order that the many may be helped. We are all required

every now and then to waive certain rights for the common good. When legislation of this kind was first attempted, the courts were amazed. It was so foreign to the then views of fundamental and natural rights of individuals that the early decisions were adverse. In fact, they were so adverse as to have stopped almost any movement or crusade. But, in this matter, the idea has spread like fire until it is now in effect in some 44 of the states of this country and in practically every nation of Europe.

Under our Texas law, employés have all their original rights when injured through willful acts or omissions. As in other states, when injured by negligence, either ordinary or gross, another plan of compensation has been substituted. We think this has been true under every act of this kind passed in Texas.

In view of what we have already said, it becomes unnecessary to pass upon the contention of the defendant in error that the allegations in this petition do not state facts which constitute gross negligence. The Court of Civil Appeals thought the petition did state such a cause of action. Since we hold that gross negligence does not authorize recovery anyway, we pretermit any discussion of the contention just mentioned.

For the reasons stated at length in this opinion, we recommend that the judgments of the district court and Court of Civil Appeals be affirmed.

CURETON, C. J. The judgment recommended in the report of the Commission of Appeals is adopted, and will be entered as the judgment of the Supreme Court.