[Civ. No. 36122. First Dist., Div. One. Apr. 30, 1975.]

DOMINIC MAGLIULO, Petitioner, v.
THE SUPERIOR COURT OF THE CITY AND COUNTY OF
SAN FRANCISCO, Respondent;
JUDITH LEE GALLAGHER, Real Party in Interest.

COUNSEL

Hanna, Brophy, MacLean, McAleer & Jensen and Norman H. Abreu for Petitioner.

No appearance for Respondent.

Werchick & Werchick and Dennis H. Black for Real Party in Interest.

OPINION

**SIMS, J.**—An alternative writ of prohibition was granted on the application of petitioner, the defendant below, to review the denial of his motion to stay proceedings in respondent court until such time as the Workmen's Compensation Appeals Board determines the issue of whether the alleged injuries of real party in interest, the plaintiff below, arose out of her employment and occurred in the course of her employment. (See *Scott* v. *Industrial Acc. Com.* (1956) 46 Cal.2d 76 [293 P.2d 18].)

On review it is determined that the action of the trial court in denying the petitioner's motion for a stay of proceedings was not an abuse of discretion because the remedy before the appeals board and the remedy before the superior court were not mutually exclusive, but complementary, because even if the prosecution of one remedy to judgment or an award might, under existing precedents, preclude resort to the other, the real party in interest was entitled to elect which remedy to pursue, and, finally, because, even if the remedies be considered as mutually exclusive, the petitioner, by his delay in proceeding before the administrative body and by his participation in the proceedings before the superior court waived his right to insist on the precedential right of the administrative body to determine the question of jurisdiction. The alternative writ must be discharged and the petition will be denied.

On February 27, 1970, real party in interest filed her application for adjudication of claim with the Workmen's Compensation Appeals Board. In her application she alleged that on February 20, 1970, while employed as a waitress by "Crow's Nest" at "Pier 37, Embarcadero," San Francisco, she sustained an injury to her back arising out of and in the course of her employment, and that the injury occurred, while she was in

the kitchen, because of an argument, when her boss, who was mad, came back and tried to pull her out of the kitchen, and hit her and threw her down after she admonished him not to touch her. She alleged that she had received no compensation and that medical treatment had been received from "Kaiser."

She sought temporary disability indemnity and medical treatment. According to the verified response served and filed on behalf of real party in interest (see Cal. Rules of Court, rule 56(b)), the employer filed an answer in those proceedings contesting the concurrence of the conditions of compensation (see Lab. Code, § 3600). At the time the response was filed, she allegedly had received no payments or medical expenses on account of her alleged disability.

On February 19, 1971, real party in interest filed her complaint containing three causes of action against petitioner and five fictitious defendants. She seeks to recover $25,000 general damages, and $25,000 exemplary damages for injuries to her back, bruises to various parts of her body, severe shock to her nervous system and other injuries, the exact extent of which were unknown at the time of filing the complaint. The injuries allegedly were incurred at approximately 12:30 a.m. on February 21, 1970, in or about the premises known as Lou and Dom's Crow's Nest Restaurant, located at the address set forth in the application for workmen's compensation benefits. In the first cause of action she alleged that petitioner and the unknown defendants without the fault of or provocation by the real party in interest, "violently, wantonly, knowingly, wilfully and maliciously did assault and batter plaintiff with intent to injure and do bodily harm to plaintiff by striking and pushing plaintiff on and about her back and various other portions of her body." In the second cause of action it is alleged that petitioner and others "did so wantonly and wilfully comport themselves in reckless disregard for the safety of others so as to cause [real party in interest] to be violently struck and pushed on or about her back and various other portions of her body." In her third cause of action she alleged that the petitioner and others "did so negligently and carelessly comport themselves so as to cause" the same results as related in the second cause of action.

On March 15, 1972, petitioner filed an answer generally denying the allegations of the complaint, and affirmatively alleging (1) that the complaint failed to state a cause of action, (2) that real party in interest was contributorily negligent, and (3) assumed the risk, (4) that her sole

remedy was for workmen's compensation benefits,[1] and (5) that the court has no jurisdiction of the subject matter of the complaint or of any cause of action in it.

According to the response, a memorandum that the case was at issue was filed by real party in interest January 4, 1973. On October 9, 1974, at a trial setting conference the matter was set for December 16, 1974.

According to the declaration of the attorney for real party in interest, filed in opposition to petitioner's motion, petitioner's deposition was taken on October 31, 1974. The attorney alleges, "In that deposition he stated that he was co-owner and partner in the Crow's Nest Tavern; that he worked in the operation of the business as a bartender; and that he received a monthly salary in a fixed amount irrespective of the profits earned by the business." Petitioner's attorney filed a declaration in these proceedings which reflects that the deposition of petitioner's brother, his partner, was taken on November 14, 1974. The brother testified that each took a regular draw of $1,000 per month from the business, and then at the end of the year if there were any profits remaining in the business they would be divided equally. He stated that in 1974 they had to borrow $30,000 to make renovations required by law in order to stay in business, so he could not tell whether there would be a profit remaining at the end of the year.

On November 19, 1974, the petitioner secured an order shortening time and served and filed his notice of motion and motion to stay proceedings which he set for hearing on November 22, 1974. Real party in interest filed points and authorities and a declaration in opposition to the motion on November 21, 1974. Thereafter, on December 10, 1974, the court denied the motion and these proceedings ensued.

---

[1]The answer alleges: "4. That at all times and places mentioned in the complaint, the plaintiff was acting within the course and scope of her employment and the matters complained of, if any there were, arose out of plaintiff's said employment. That plaintiff's employer at said times and places was defendant, DOMINIC MAGLIULO, doing business as the CROW'S NEST. That plaintiff's sole remedy for any injuries sustained in the incidents complained of in plaintiff's complaint, if any there were, is for workmen's compensation benefits pursuant to the Labor Code of the State of California, and that the sole jurisdictional tribunal for determination of said benefits is the Workmen's Compensation Appeals Board of the State of California."

This defense, if proved, would be a complete defense to the third cause of action and in that sense the court action and the compensation are mutually exclusive. As demonstrated below (see parts I and II) the cause of action in the first cause of action may be cumulative with, or, at least an alternative to, the right to compensation. The relationship between the right to compensation and the second cause of action would depend on the acts and mental state of the employer *(id)*.

## I

In *Scott* v. *Industrial Acc. Com., supra,* the respective rights of the injured party in each proceeding were mutually exclusive.[2] The plaintiff in the earlier civil action disputed the defendant's contention that he was an employee, and contested the right of the defendant and its compensation insurance carrier to secure an adjustment of the alleged claim of plaintiff to compensation as an employee in the subsequent proceedings before the Industrial Accident Commission. In granting a writ of prohibition staying proceedings before the commission the court applied the following rule: "General principles applicable to controversies in which the same parties and the same subject matter are involved are these: When two or more tribunals in this state have concurrent jurisdiction, the tribunal first assuming jurisdiction retains it to the exclusion of all other tribunals in which the action might have been initiated. Thereafter another tribunal, although it might originally have taken jurisdiction, may be restrained by prohibition if it attempts to proceed. [Citations.] One reason for the rule is to avoid unseemly conflict between courts that might arise if they were free to make contradictory decisions or awards at the same time or relating to the same controversy; another reason is to protect litigants from the expense and harassment of multiple litigation. [Citations.]" (46 Cal.2d at pp. 81-82.)

The foregoing rule has been applied to halt proceedings in a civil suit in the superior court in which the injured party alleged that while employed by a third party he was injured by the alleged negligence of petitioner, when in fact he had alleged and stipulated the petitioner was his employer, in a prior application to the Industrial Accident Commission. (*Taylor* v. *Superior Court* (1956) 47 Cal.2d 148, 151 [301 P.2d 866]. Cf. *Sea World Corp.* v. *Superior Court* (1973) 34 Cal.App.3d 494, 503 [110 Cal.Rptr. 232].)

---

[2]The court observed, "In other words . . . the only point of concurrent jurisdiction of the two tribunals appears to be *jurisdiction to determine jurisdiction;* jurisdiction once determined will be exclusive, not concurrent. [Citations.] If at the time of the accident there was no workmen's compensation coverage, then the commission is without jurisdiction to grant relief, and if there was such coverage then the superior court is without jurisdiction and must leave the parties to pursue their remedies before the commission. [Citations.] It is elementary that the type and extent of relief which can be granted and the factors by which such relief is determined differ materially between the two tribunals; the superior court cannot award workmen's compensation benefits, and the commission cannot award damages for injuries." (46 Cal.2d at p. 83.)

In *Busick* v. *Workmen's Comp. Appeals Bd.* (1972) 7 Cal.3d 967 [104 Cal.Rptr. 42, 500 P.2d 1386], the court affirmed a decision `of the Workmen's Compensation Appeals Board which had denied recovery to a former employee injured by the intentional assault of her employer after it found that the injury did not arise out of and occur in the course of her employment. The injured party had pursued to final judgment a subsequent action for assault and battery against the former employer's estate. The Supreme Court refused to review the evidence and stated: "We have concluded that, . . : the superior court judgment should be given res judicata effect precluding recovery before the Board and that, therefore, the decision of the Board should be affirmed." (7 Cal.3d at p. 972.) Conversely in *Jones* v. *Brown* (1970) 13 Cal.App.3d 513 [89 Cal.Rptr. 651], this court held that it was proper to grant a summary judgment against the plaintiff in a personal injury suit against her employer, predicated on the theory that as a domestic servant she had not elected prior to the injury to accept the workmen's compensation proceedings (see Lab. Code, § 4154; 13 Cal.App.3d at pp. 518-519), because by prosecuting her application for compensation benefits to final judgment the issue of coverage became res judicata (13 Cal.App.3d at pp. 520-521).

Real party in interest seeks to avoid the effect of the foregoing decisions on the theory that her remedies here are cumulative and not mutually exclusive. She finds solace in the dissenting opinion in *Busick* v. *Workmen's Comp. Appeals Bd., supra,* where the late Justice Peters, joined by two colleagues presently on the court, observed: "Damages for assault and battery and workmen's compensation benefits cannot be obtained in the same forum in California, and the crucial question presented is whether those remedies are cumulative or alternative in the circumstances of the instant case." (7 Cal.3d at pp. 980-981.) He pointed out, "The subject is specifically dealt with by section 3601 of the Labor Code, which makes the remedies mutually exclusive in some situations but cumulative in others. The section provided in part at the times relevant here that where 'the conditions of compensation exist,' the compensation remedy is exclusive against the employer or any other employee of the employer 'except that an employee . . . shall, in addition to the right to compensation against the employer, have a right to bring an action at law for damages against such other employee, as if this division did not apply, in the following cases: [¶] (1) When the injury or death is proximately caused by the willful and unprovoked physical act of aggression of such other employee. . . .' " (*Id.,* p. 981.) In order to bring the employer within the purview of the quoted exception, he

stated, "Section 3359 of the Labor Code, which, like section 3601, is found in division 4 of the code, provides that a 'working member of a partnership receiving wages irrespective of profits from such partnership is an employee under this division.' " *(Id.)*

The majority opinion did not expressly disapprove of this analysis, it disposed of it as follows: "My esteemed colleague in dissent speculates that petitioner's civil action for damages might have been one brought against Mr. Albright as her *co-employee,* who was a working member of a partnership. (Lab. Code, §§ 3359, 3601.) As previously mentioned . . . there is no evidence in the record indicating that Albright Express was a partnership. Nor was the contention now advanced by the dissenting opinion ever urged by petitioner in this court, or the Court of Appeal, or before the Board." *(Id.,* p. 977.)

In this case, on the declarations before it, the trial court was warranted in finding that the rights of real party in interest were cumulative rather than mutually exclusive. It was therefore no abuse of its discretion to refuse to stay the trial.

## II

In *Sonberg v. Bergere* (1963) 220 Cal.App.2d 681 [34 Cal.Rptr. 59], the court concluded that an employee of a partnership who is injured in the course and scope of her employment by the negligence of a partner could not maintain an action to recover damages from the negligent partner (220 Cal.App.2d at p. 682). The employee sought to hold the partner as a fellow employee who was liable for her negligence. The court, instead of relying on the exclusive remedy provisions of section 3601 which bar a right of action against a fellow employee for ordinary negligence, ruled as follows: "While as between the partners a working partner receiving compensation in addition to his share of the profits is an employee within the meaning of that term as used in the Workmen's Compensation Act (Lab. Code, § 3359), he remains as to the employees of the partnership an employer within the meaning of that act." *(Id.,* at p. 683.) If this rationale be deemed to control the dictum in *Busick* v. *Workmen's Comp. Appeals Bd., supra,* which we have opined should be applied, it is necessary to examine the question of the civil liability of the employer for his intentional torts.

A noted commentator has stated the applicable rule as follows: "Intentional injury inflicted by the employer in person on his employee

may be made the subject of a common-law action for damages on the theory that, in such an action, the employer will not be heard to say that his intentional act was an 'accidental' injury and so under the exclusive provisions of the compensation act. . . ." (2 Larson, Workmen's Compensation Law (1975) § 68.00, p. 13-1. See *Readinger* v. *Gottschall* (1963) 201 Pa.Super. 134, 136-138 [191 A.2d 694, 695-696]; *Le Pochat* v. *Pendleton* (1946) 187 Misc. 296, 298 [63 N.Y.S.2d 313, 315-316, affd. (1947) 271 App.Div. 964 (68 N.Y.S.2d 594)]; *Stewart* v. *McLellan's Stores Co.* (1940) 194 S.C. 50, 54-56 [9 S.E.2d 35, 36-37]; and 101 C.J.S., Workmen's Compensation, § 926, subd. b, p. 381.)

In this state the constitutional and statutory provisions do not focus on the "accidental" nature of the work-connected injury and disability. The key words in the enabling constitutional provisions are, ". . . to create and enforce a liability on the part of any and all persons to compensate any or all of their workmen for injury or disability, and their dependents for death incurred or sustained by the said workmen in the course of their employment, *irrespective of the fault of any party."* (Cal. Const., art. XX, § 21. See *Mathews* v. *Workmen's Comp. Appeals Bd.* (1972) 6 Cal.3d 719, 728-736 [100 Cal.Rptr. 301, 493 P.2d 1165].)[3] Nevertheless in the case last cited the court concluded on the basis of a thorough review of the constitutional and statutory history, ". . . the use of the phrase 'irrespective of the fault of any party' in section 21 was intended only to give the Legislature power to grant benefits unhampered by common law tort concepts of *negligence;* it has never been construed as prohibiting the Legislature from increasing, decreasing or even eliminating awards based upon the *wilful wrongdoing* of a party." (6 Cal.3d at p. 728.) That there is no constitutional restraint in treating intentionally inflicted

---

[3]Singularly, although the following provisions of the Constitution enumerate what should be included in a "complete system of workmen's compensation," there is no provision mandating the provisions found in Labor Code section 3601, which read: "(a) Where the conditions of compensation exist, the right to recover such compensation, pursuant to the provisions of this division is, except as provided in Section 3706 [where employer fails to secure payment of compensation], the exclusive remedy for injury or death of an employee against the employer or against any other employee of the employer acting within the scope of his employment, . . ." Nevertheless the constitutionality of that provision has been established under the constitutional authorization "to provide for the settlement of any disputes arising under such legislation by arbitration, or by an industrial accident commission, by the courts, or by either, any or all of these agencies, either separately or in combination . . . ." (Cal. Const., art. XX, § 21; *Dominguez* v. *Pendola* (1920) 46 Cal.App. 220, 224 [188 P. 1025]. See also *Western Indemnity Co.* v. *Pillsbury* (1915) 170 Cal. 686, 695 [151 P. 398]; and *Corley* v. *Workmen's Comp. Appeals Bd.* (1971) 22 Cal.App.3d 447, 460, fn. 9 [99 Cal.Rptr. 242] [disapproved on other grounds *Roe* v. *Workmen's Comp. Appeals Bd.* (1974) 12 Cal.3d 884, 892 (117 Cal.Rptr. 683, 528 P.2d 771)].)

injuries different from negligently inflicted injuries is evidenced by the following statement: "Finally, to hold that section 21 of article XX prohibits the Legislature from taking into account *the intentional wrongdoing of employer* or employee in providing for compensation would cast doubt over a vast number of other Labor Code provisions which incorporate a notion of intentional fault." (*Id.,* p. 735, italics added.)[4] ■ It may therefore be proper to say that the provisions of section 3601 (see fn. 3 above) should be read in the light of section 3600 which refers to "without regard to negligence," and that in the absence of a controlling statute the courts are free to determine whether the employer loses his immunity from civil suit in the event he personally intentionally inflicts an injury on the person of his employee.

It is recognized that it is a legal fiction in many cases to attempt to justify the right to a civil action on the theory that the employer terminated the employer-employee relationship by his intentional act of violence. (See Larson, *op.cit.,* p. 13-2.) In this state the issue was first presented in *Conway* v. *Globin* (1951) 105 Cal.App.2d 495 [233 P.2d 612]. There the employee in a civil action alleged that while engaged in the performance of his duties as manager of a resort, the owner without provocation wilfully attacked him damaging his clothing and inflicting personal injuries for which the employee sought compensatory and punitive damages (105 Cal.App.2d at p. 496). The case was presented on the single issue of "whether the allegations of the complaint established the conditions of compensation as provided in the Workmen's Compensation Law." It was assumed that if they did appellant had no cause of action against respondent. (Cf. discussion below.) In reversing a judgment which had been entered following the sustaining of the employer's demurrer to the employee's complaint, the court recognized the weight of authority, as similarly more recently enunciated in the above quotation from *Larson.*[5] It referred to the principle "that compensation

[4]Legislative provisions, particularly Labor Code section 4553, which increases the award by one-half where the injury is caused by the employer's serious and wilful misconduct, are discussed below.

[5]The opinion recites: "The situation so presented herein has been dealt with specifically in the compensation laws of various states by provisions that in the event of death or injury resulting from the deliberate intention of the employer to produce such death or injury, the employee or his survivor may, in addition to his remedy under the Workmen's Compensation Law, maintain an action at law against the employer for damages over the amount payable under the compensation system. (See Schneider's Workmen's Compensation Statutes, vol. 4, p. 3210, Ore. § 49-1828.) In line with such statutory enactments the weight of authority is that 'where an employer inflicts the intentional injury upon his employee, the injured person may sue at common law for damages or accept benefits under Workmen's Compensation Law. *DeCoigne* v. *Ludlum*

will be granted for injuries due to assaults by fellow-employees where the same are fairly traceable to an incident of the employment and will be denied where they are the result of personal grievances unconnected in any way with the employment." (*Globe Indemnity Co.* v. *Industrial Acc. Com.* (1934) 2 Cal.2d 8, 12 [37 P.2d 1039]. Cf. Peters, J. dissenting *Busick* v. *Workmen's Comp. Appeals Bd., supra,* 7 Cal.3d at pp. 986-987.) It recognized that a disability was compensable under the act if it did "occur by reason of a risk or condition incident to the employment." (*Pac. Emp. Ins. Co.* v. *Ind. Acc. Com.* (1942) 19 Cal.2d 622, 628 [122 P. 2d 570, 141 A.L.R. 798].) The opinion continues, "But that is not to say that an intentional assault by the employer is a risk or condition incident to the employment. To so hold would be not only to sanction indirectly conduct of the employer which is both tortious and criminal, but also would be to permit the employer to use the Workmen's Compensation Act to shield him from his larger civil liability, which liability would exist independent of the common law defenses to personal injury actions by employees which prevailed prior to the advent of the Workmen's Compensation Act." (*Conway* v. *Globin, supra,* 105 Cal.App.2d at p. 498. See also Larson, *op.cit.,* p. 13-13; and *Boek* v. *Wong Hing* (1930) 180 Minn. 470, 471-473 [231 N.W. 233, 233-234; 72 A.L.R. 108, 109.) Having thus demonstrated that an action should be permitted, whether as an alternative to, or cumulative with a right to compensation, the court reverted to the limited concept in which the issue was framed, and concluded: "For the reasons herein stated we conclude that the allegations in the complaint that an employment relationship existed is immaterial, since the further allegations that the plaintiff's injuries resulted from defendant employer's wilful attack upon plaintiff, allege an injury which is not a risk or condition of the employment, and hence one not arising out of the employment. It therefore follows that since the injury alleged was not compensable under the Workmen's Compensation Act, the demurrer based upon the purported exclusive jurisdiction of the Industrial Accident Commission should have been overruled." (*Id.,* p. 498.)

In *Carter* v. *Superior Court* (1956) 142 Cal.App.2d 350 [298 P.2d 598], the court stated: "It is now settled in this state that an employee who sustains an injury which is intentionally inflicted by his employer is not

Steel Co., 251 App.Div. 662 [297 N.Y.S. 636]; *LePochat* v. *Pendleton,* 187 Misc. 296 [63 N.Y.S.2d 313]; *Boek* v. *Wong Hing,* 180 Minn. 470 [231 N.W. 233, 72 A.L.R. 108]; *Castleberry* v. *Front-Johnson Lumber Co.* (Tex.Com.App.), 283 S.W. 141; *Stewart* v. *McLellan's Stores Co.,* 194 S.C. 50 [9 S.E.2d 35]; *Rumbolo* v. *Erb,* 20 A.2d 54 [19 N.J.Misc. 311].' (*Mazarredo* v. *Levine,* 76 N.Y.S.2d 324, 325.)" (105 Cal.App.2d at pp. 497-498.)

relegated to a claim for compensation before the Industrial Accident Commission, but may treat his injury as not having arisen out of and in the course of his employment; and he may, therefore, maintain an action at law to recover damages both compensatory and exemplary. (*Conway* v. *Globin,* 105 Cal.App.2d 495 . . . .)" (142 Cal.App.2d at p. 354.) Although the *Carter* court considered as dictum the statement in the earlier decision that the employee had alternative remedies, it stated on its own behalf, "It seems to us . . . that an employee who during the course of his employment sustains an injury which is intentionally inflicted on him by his employer, does have a choice of remedies. He may· assert that the injury occurred by reason of a risk or condition incident to the employment, and seek compensation before the Industrial Accident Commission; or he may assert that his injury did not arise out of a risk or condition incident to his employment, and seek damages in an action at law. In neither case would it lie in the mouth of his employer, who had intentionally inflicted the injury, to assert the contrary of that which is asserted by the employee." (*Id.,* p. 355.)

The issue before the court was whether the trial court erred in striking the employer's special defense which alleged that for the same injury the employee had filed a claim before the Industrial Accident Commission which had been finally disposed of by a settlement agreement which was approved by the commission. The court held, "The facts pleaded in the defense stricken by the respondent court were sufficient to have permitted petitioner to have proved this election of remedies as a bar to the action." (*Id.,* p. 356.) In so doing the court treated the remedies as mutually exclusive because the issue to be ultimately determined was whether or not the injury was one which arose out of the employment. (See *Scott* v. *Industrial Acc. Com., supra.*) It observed, "We do not wish to be understood as holding that the mere filing of a claim for compensation with the Industrial Accident Commission would bar the subsequent filing of an action at law for damages, or that the mere filing of an action at law for damages would preclude the subsequent filing of a claim for compensation. Undoubtedly an injured employee who is in doubt as to whether his cause of action is one for compensation or one for damages, and therefore in doubt as to which tribunal—that is, the Industrial Accident Commission on the one hand or the courts on the other—has jurisdiction of his cause of action, may submit this question to either tribunal." (*Id.,* pp. 355-356.) Despite the fact that the court gave. the employee an election of remedies, it, in deference to *Scott,* further

noted that the tribunal whose jurisdiction was first invoked alone had the right to proceed. (*Id.*, at p. 356.)[6]

The foregoing rule is inconsistent with that applicable to an intentional injury inflicted by a fellow servant. Section 3601 recognizes that the right to recover workmen's compensation benefits is not exclusive, but cumulative, "When the injury or death is proximately caused by the willful and unprovoked physical act of aggression of such other employee." (See *State Comp. Ins. Fund* v. *Ind. Acc. Com. (Hull)* (1952) 38 Cal.2d 659, 671 [242 P.2d 311] [qualified by subdivision (g) of section 3600, and *Mathews* v. *Workmen's Comp. Appeals Bd., supra,* 6 Cal.3d 719, 728-737]; Hanna, Cal. Law of Employee Injuries and Workmen's Compensation (2d ed. 1972) §§ 10.03 [1] and 23.02 [2][d], pp. 10-9/10-14 and 23-8/23-11; 2 Witkin, Summary of Cal. Law (8th ed. 1973) Workmen's Compensation, §§ 47-49, pp. 891-892 and § 203, p. 1023; Cal. Workmen's Compensation Practice (Cont.Ed.Bar 1973) § 17.32, p. 637; and Herlick, Cal. Workmen's Compensation (1970) § 12.26, pp. 333-335.) It has been noted that it is only the fellow employee's acts of ordinary negligence within the "scope of employment" which clothe him with immunity from civil suit, and that where the act or omission is not so categorized, the co-worker may recover from the fellow employee even though both were in a position where compensation might be awarded for an injury because each was enjoying benefits furnished by the employer which arose out of the course of employment. (See *Saala* v. *McFarland* (1965) 63 Cal.2d 124, 128 [45 Cal.Rptr. 144, 403 P.2d 400]; and *McIvor* v. *Savage* (1963) 220 Cal.App.2d 128, 139-140 [33 Cal.Rptr. 740].) The Supreme Court concluded that, as used in subdivision (a) of section 3601 (see fn. 3 above), " '[t]he words "acting within the scope of his employment" should be construed in the light of the purpose of the section, so as not to extend the immunity beyond *respondeat superior* situations.' [Citation.]" (63 Cal.2d at p. 130.) This strict construction of the immunity from civil suit, contrasts with the broad injunction of section 3202 which "enjoins us to construe the workmen's compensation

---

[6]The right to an independent civil suit where an individual employer personally commits a wilful, malicious and intentional personal assault upon the employee as established in *Conway* v. *Globin, supra,* was recognized and distinguished on the facts in *Noe* v. *Travelers Ins. Co.* (1959) 172 Cal.App.2d 731, 738 [342 P.2d 976]. At that point in time it was recognized by commentators that an employee could sue civilly for an intentional assault by the employer on the theory that such an assault is not a risk or condition incident to the employment. (See 2 Hanna, The Law of Employee Injuries and Workmen's Compensation (1954) p. 551, fn. 10; 2 Witkin, Summary of Cal. Law (7th ed. 1960) Workmen's Compensation, § 78, p. 1719; and Cal. Workmen's Compensation Practice (Cont.Ed.Bar 1963) § 3.55, pp. 96-97.)

provisions of the Labor Code liberally 'with the purpose of extending their benefits for the protection of persons injured in the course of their employment.' Consequently, the provisions . . . which deny compensation to persons so injured, must be narrowly and strictly construed. [Citation.]" (*Mathews* v. *Workmen's Comp. Appeals Bd., supra,* 6 Cal.3d pp. 725, 726.) The situation is analogous to that in liability insurance where the insuring language is governed by the following rule, "If semantically permissible, [an insurance] contract will be given such construction as will fairly achieve its object of securing indemnity to the insured for the losses to which the insurance relates." (*Continental Cas. Co.* v. *Phoenix Constr. Co.* (1956) 46 Cal.2d 423, 437 [296 P.2d 801, 57 A.L.R.2d 914].) On the other hand, "The exclusionary clause 'must be *conspicious, plain and clear.*' [Citation.]" (*State Farm Mut. Auto. Ins. Co.* v. *Jacober* (1973) 10 Cal.3d 193, 202, and cf. p. 203 [110 Cal.Rptr. 1, 514 P.2d 953].) In short, though consistency may be a virtue, if the law is to be "the true embodiment of everything that's excellent" it should be consistent in its results. If the employee can recover both compensation and damages caused by an intentional assault by a fellow worker, he should have no less right because the fellow worker happens to be his boss.

In *Azevedo* v. *Industrial Acc. Com.* (1966) 243 Cal.App.2d 370 [52 Cal.Rptr. 283], a reconstituted court in the same appellate district as had decided *Conway* v. *Globin* reviewed a commission decision which had dismissed an application for work-induced injuries on the ground that the commission lacked jurisdiction because the complaint involved an intentional injury by her employer. The court pointed out that the pendency of a subsequently filed civil suit did not deprive the commission of jurisdiction. It said, "It was the tribunal first selected to determine facts upon which its jurisdiction depended. (*Taylor* v. *Superior Court,* 47 Cal.2d 148 . . .; *Scott* v. *Industrial Acc. Com.,* 46 Cal.2d 76 . . .; 45 Cal.L.Rev. 97.)" (243 Cal.App.2d at p. 372.) The court overruled *Conway* v. *Globin, supra,* insofar as it had attempted to distinguish between assaults by a fellow employee and assaults by an employer, and had denied compensation in the latter case because it was not a risk of the employment. (*Id.,* at pp. 372-373.) The court left for future decision the question of whether workmen's compensation was the exclusive or an alternative remedy for an intentional assault by an employer which was fairly traceable to an incident of the employment, and not the result of a personal grievance, unconnected with the employment.[7] The court

---

[7]The court stated with respect to the reasoning in *Conway* v. *Globin* (105 Cal.App.2d at p. 498), which has been quoted above: "The inference of the foregoing statement that the

concluded, "We hold that the intentional assault committed by an employer upon his employee under the circumstances here—being an act 'fairly traceable to an incident of the employment' and not 'the result of personal grievances unconnected with the employment' is within the jurisdiction of the commission where, as here, that jurisdiction is first sought and enlisted by the injured employee. Further than that we need not, and do not, go." (*Id.*, at pp. 376-377.)

Thereafter, in *Azevedo* v. *Abel* (1968) 264 Cal.App.2d 451 [70 Cal.Rptr. 710], the same court faced the questions left undecided in the prior action. The court consolidated the employee's appeal from a dismissal of her civil suit, on the ground exclusive jurisdiction was in the commission under the provisions of sections 3600 and 3601 of the Labor Code, and the compensation carrier's petition for review of a workmen's compensation decision, which had awarded the employee temporary and permanent disability benefits, medical expense and further medical treatment. The court first addressed itself to the compensation carrier's argument that the provisions of section 533 of the Insurance Code and of section 1668 of the Civil Code, prohibited insurance and indemnification against wilful injury. It is questionable whether those provisions are applicable. The loss insured against is not a liability arising from the effects of the misfeasance or nonfeasance of the employer or anyone else. It is the result to the injured employee and the concurrence of the conditions set

---

employer would find shelter anywhere in the workmen's compensation laws from criminal prosecution for a criminal assault is, of course, unfounded. *(As to whether these laws preclude a common law action in torts we do not decide. (See fn. 1.))* Regarding the rest of the quoted statement, the provisions of the workmen's compensation laws are not entirely a 'shield' to the employer: they are a sword to the injured employee—immunizing him from most of the defenses available to a defendant in a common law action for a civil assault (see e.g., 5 Cal.Jur.2d, Assault and Battery, § 12 et seq., p. 232), also affording him penalty sanctions for serious and wilful misconduct (Lab. Code, § 4553), guarantying him (except as to the penalty provisions mentioned above) against his employer's insolvency by provision for compulsory insurance (Lab. Code, § 3700) (a benefit denied in a common law action since insurance against intentional torts is not only not compulsory but unlawful as against public policy) (Ins. Code, § 533; Civ. Code, § 1668; *Tomerlin* v. *Canadian Indemnity Co.*, 61 Cal.2d 638, 648 . . .). And probably most important of all to the employee, he receives prompt and comprehensive medical care (Lab. Code, § 4600)." (243 Cal.App.2d at pp. 373-374, italics added.)

The footnote reads, "1. The *Carter* decision also states the employee has 'a choice of remedies.' Herein we limit our accord with the views expressed in the *Carter* decision to those relevant to the holding that work-connected assaults by employers upon employees are within the commission's jurisdiction. *The questions of whether the commission's jurisdiction is exclusive or whether superior court jurisdiction is in addition or an alternative to jurisdiction of the commission present many problems. (See e.g., Lab. Code, § 3501, as amended in 1959; Stats. 1959, ch. 1189, p. 3275.) Petitioner attempts to raise these questions but they are not issues here and should be decided on a pertinent record.*" (*Id.*, p. 373, italics added.)

forth in section 3600 of the Labor Code which create the obligation. If the action or inaction of the employer, which is work related, results in injury to the employee it is immaterial whether the employer was careful, negligent or wilful. The compensation is akin to accident or health insurance or medicare to aid the victim. Under these circumstances, there is no public policy against insuring the payment of the basic compensation provided by the act. Public policy only comes into play in determining whether the responsible actor should be charged with pecuniary responsibility in addition to furnishing such insurance. The *Azevedo* court correctly pointed out that under the provisions of sections 4553, 4553.1, and Insurance Code section 11661, the additional compensation recoverable for serious and wilful misconduct of the employer or his agent cannot be insured. It concluded that these specific statutes controlled the situation to the exclusion of the provisions of law upon which the carrier relied. No additional award for serious and wilful misconduct having been made, the award of ordinary compensation against the carrier was affirmed. (264 Cal.App.2d at pp. 456-458.)

With respect to the dismissal of the employee's civil suit the court observed that the dismissal was premature. It pointed out, "A judicial affirmation of compensability becomes *res judicata* only when it reaches finality." (*Id.,* p. 460.) Having affirmed the award, it proceeded further. The employee urged "a concurrent pair of liabilities and concurrent jurisdiction on the part of the two tribunals in this limited class of cases, the ultimate damage award to be diminished by the compensation award." (*Id.,* p. 458.) In refusing to reverse the dismissal the decision went no further than *Carter* v. *Superior Court, supra,* which held that a final compensation award could be an election of remedies which would be a defense to a subsequently filed civil suit against the employer (142 Cal.App.2d at p. 356). The *Azevedo* court, however, purported to go further, and indicated that the employee did not have a choice of remedies, as suggested in *Carter.* It examined and rejected the reasons advanced to support the right of an employee to bring an independent civil action for the injuries suffered from an intentional assault by his employer.[8] It concluded, "Whenever, to employ the terminology of

---

[8]The court stated: "The compensation laws of some states expressly sanction tort damage recovery in addition to the compensation award where the injury resulted from the employer's deliberate act. (2 Larson, Workmen's Compensation Law, pp. 160-161.) In some other jurisdictions the courts have rejected employer attempts to invoke workmen's compensation coverage as a defense against intentional tort suits. Some, as did this court in *Conway* v. *Globin* . . . declare that the employer's intentional wrong is not employment-connected at all; others that the employer's deliberate wrong gives the employee a choice of remedies between a civil action and workmen's compensation

section 3601, the 'conditions of compensation' are found to exist, [the employee's] entitlement is or will be confined to workmen's compensation benefits." (264 Cal.App.2d at p. 460.)[9]

claim. One theory is that the employer 'will not be heard' to allege that his intentional wrong was an industrial accident; another that he severed the employment relationship by his act of violence; another that resort to workmen's compensation as a bar to civil relief encourages willful torts.

"No question is raised here as to coverage by the workmen's compensation law. The same law, in Labor Code sections 3600-3601, declares itself the exclusive source of entitlement for covered injuries. A damage suit as an alternative or additional source of compensation, becomes permissible only by carving a judicial exception in an uncarved statute. Whatever the question of judicial power, the *ad hoc* theories devised to avoid the statute possess shallow appeal. Resort to a fictitious theory of noncompensability relegates the employee to the dubious benefit of a lawsuit he may lose. The theory which poses a civil action as a sanction against deliberate torts is enfeebled by the compensation law's penalty for serious and willful misconduct. Neither moral aversion to the employer's act nor the shiny prospect of a large damage verdict justifies interference with what is essentially a policy choice of the Legislature. The policy choice is to provide employees economic insurance against disability in exchange for the speculative possibility of general damages; to offer the augmented award for serious and willful misconduct in trade for the relatively rare award of punitive damage." (264 Cal.App.2d at pp. 458-460, fns. omitted.)

[9]In *Unruh* v. *Truck Insurance Exchange* (1972) 7 Cal.3d 616 [102 Cal.Rptr. 815, 498 P.2d 1063], the court upheld the right of the employee to sue the compensation carrier for assault and battery and the intentional infliction of emotional distress. In pointing out that the "exclusive remedy provisions" of section 3601 did not cover the compensation insurer, the court observed: "It has been held that an employee cannot bring an action at law against his *employer* for damages for injuries intentionally inflicted by the employer upon the employee and incurred by the latter in the course of the employment. (*Azevedo* v. *Industrial Acc. Com.* (1966) 243 Cal.App.2d 370, 376-377 . . .; see *Azevedo* v. *Abel* (1968) 264 Cal.App.2d 451, 458-460 . . . .) But, as already noted, the 'exclusive remedy' provisions of section 3601 nowhere extend the employer's immunity to cover the compensation insurer. We must decide whether the carrier which commits an intentional tort becomes a 'person other than the employer.' " (7 Cal.3d at pp. 629-630.) In *Busick* v. *Workmen's Comp. Appeals Bd.*, *supra*, 7 Cal.3d 967, the court held that the final judgment in a civil action to recover damages for an intentional tort of an employer was res judicata and precluded an award of compensation to the employee. There the court noted, "11. The identity of the cause of action brought before the superior court and underlying the proceedings before the Board is in no way affected by the fact that the complaint in the superior court alleged only that Albright 'did maliciously and wrongfully assault and cause a battery in and upon the body of plaintiff . . . ,' without mentioning an employment relationship. If the injury were employment-related, even though intentionally inflicted, jurisdiction would have been before the Board rather than in the superior court. (*Azevedo* v. *Abel* (1968) 264 Cal.App.2d 451, 458-460 . . . .)" (7 Cal.3d at p. 975, fn. 11.)

These references indicate that the California Supreme Court is perhaps prepared to adopt the mutually exclusive doctrine suggested by the *Azevedo* cases. Commentators in the field have reserved judgment. It is recognized that an intentional assault or other injury inflicted by an employer or an employee, which is fairly traceable to an incident of the employment and not merely the result of a personal grievance, may serve as the basis for an award of compensation. (Hanna, Cal. Law of Employee Injuries and Workmen's Compensation (2d ed. 1972) § 10.03 [2], p. 10-14; 2 Witkin, Summary of Cal. Law (8th ed. 1973) Workmen's Compensation, § 154, p. 982; Cal. Workmen's Compensation

If we were to consider the question as one of first impression we would conclude that the contention advanced by Mrs. Azevedo is a preferable solution. If an employee is injured by the intentional assault of a customer (Lab. Code, § 3852), or a fellow worker or supervisor (§ 3601, subd (a) (1)), he is entitled to compensation if the assault is work related, and as well to his right of action against the tortfeasor. If the employer in a small business is a one-man corporation, the one-man supervisor may be subjected to the foregoing liability, but if he is a sole proprietor or a working partner, the *Azevedo* cases suggest there is but one remedy. This incongruous result should not be countenanced unless compelled by the statute. Characterization of each of the reasons for imposing civil tort liability in the case of an intentional injury by an employer as "a fictitious theory of noncompensability" (see fn. 8 above) does not lessen the merit of such reasons. The provisions of section 3601 which allow an action at law against a fellow employee "[w]hen the injury or death is proximately caused by the willful and unprovoked physical act of aggression of such other employee" are predicated upon a policy which is equally applicable to such acts by the employer. By erecting a straw man of exclusiveness, when cumulative remedies are requested, the second *Azevedo* case creates an ostensible syllogism which leads to the preclusion of what was sought. (See *id.*)

The statute itself expressly provides for civil actions for damages at law in the first two situations. It is said an action against the employer "becomes permissible only by carving a judicial exception in an uncarved statute." *(Id.)* In the first *Azevedo* case the court observed: "Nowhere is the word 'accident' mentioned. As stated above, 'serious and wilful misconduct' by an employer results in penalty provisions under Labor Code section 4553. That term, although more comprehensive than, certainly embraces an assault." (243 Cal.App.2d at p. 374.) The court also emphasized the phrase "irrespective of the fault of any party" as found in section 21 of article XX of the Constitution. As has been pointed out above, the Constitution contains no mandate concerning the exclusiveness of the remedy. The principal concern of the statutes, from the first act through present section 3600 of the Labor Code, is with "liability for compensation . . . without regard to negligence." If one were to engage in the clairvoyant process of discovering the legislative

Practice (Cont.Ed.Bar 1973) § 3.22, pp. 76-77; and Herlick, Cal. Workmen's Compensation Law Handbook (1970) § 10.9, pp. 255-256. Cf. fn. 6, above.) Whether the remedy is exclusive is not so clear. (Hanna, *op.cit.*, § 22.03 [3], pp. 22-33/22-35; Cont.Ed.Bar, *op.cit.*, § 17.27, p. 634; but see 2 Witkin, *op.cit.*, §§ 20 and 21, pp. 866-869; and Herlick, *op.cit.*, § 12.22, p. 332.)

intent, it could be argued that the constitutional and statutory provisions were adopted in the light of a general view that an action at law would lie against the employer for injuries received from an intentional assault. The concept has developed that injuries from an assault whether by third person, fellow employee or employer may arise out of, be incidental to, and be within the course of the employee's employment. (See *California Comp. & Fire Co.* v. *Workmen's Comp. App. Bd.* (1968) 68 Cal.2d 157, 161-162 [65 Cal.Rptr. 155, 436 P.2d 67]; *State Comp. Ins. Fund* v. *Ind. Acc. Com., supra,* 38 Cal.2d 659, 671; and *Globe Indemnity Co.* v. *Industrial Acc. Com., supra,* 2 Cal.2d 8, 13.) The development of that concept and the allowance of compensation should not preclude an action against the employer anymore than it should an action against a third person or a fellow employee.

A more cogent reason for uniformity and a strict insistence on alternative and not cumulative remedies is found in the following statement: "The policy choice is to provide employees economic insurance against disability in exchange for the speculative possibility of general damages; to offer the augmented award for serious and willful misconduct in trade for the relatively rare award of punitive damage." (264 Cal.App.2d at pp. 459-460, fn. 8 above. See also *Ray* v. *Industrial Acc. Com.* (1956) 146 Cal.App.2d 393, 397 [303 P.2d 793]; *Sasser* v. *Miles & Sons Trucking Service* (1953) 119 Cal.App.2d 239, 241-242 [259 P.2d 488]; *Law* v. *Dartt* (1952) 109 Cal.App.2d 508, 509 [240 P.2d 1013]; and *DeCarli* v. *Associated Oil Co.* (1922) 57 Cal.App. 310, 311-312 [207 P. 282].) It may be rational to imply that an employee is willing to surrender common law rights and disabilities, which he never knew he had or suffered, for what most employees are actually cognizant of—compensation and medical care for work-related injuries. It is not so clear that the employee when he takes employment with a sole proprietor or a partnership contemplates that his employer is going to assault him, or, that if he does, the employee will have to be satisfied with an award of one-half the compensation otherwise recoverable, with a limit which at the time of the injury in this case was $7,500 and has now been increased to $10,000, plus litigation expenses not to exceed $250. (Lab. Code, § 4553; cf. Stats. 1959, ch. 1189, § 5, p. 3277.) It is submitted that the section has to be read in the light of the constitutional and statutory provisions which are concerned with fault in the sense of negligence. Ordinary compensation is awarded "without regard to negligence."

A review of the precedents applying section 4553 strengthens the conclusion that it is to be applied where "the serious and willful

misconduct" is that which falls between ordinary negligence and an intentional act. (See 2 Larson, *op.cit.,* §§ 69, 69.10 and 69.20, particularly pp. 13-42 and 13-43/13-47; Hanna, *op.cit.,* § 17.02, pp. 17-4/17-32; 2 Witkin, *op.cit.,* Workmen's Compensation, §§ 198-205, pp. 1017-1026; Cont.Ed.Bar, *op.cit.,* §§ 14.77-14.85, pp. 520-527; Herlick, *op.cit.,* § 11.14-11.20, pp. 298-304.) In sustaining the validity of the provisions now found in section 4553, the Supreme Court said, " 'Serious misconduct' of an employer must . . . be taken to mean conduct which the employer either knew, or ought to have known, if he had turned his mind to the matter, to be conduct likely to jeopardize the safety of his employees." (*E. Clemens Horst Co.* v. *Industrial Acc. Com.* (1920) 184 Cal. 180, 188 [193 P. 105, 16 A.L.R. 611].) "Willful" was recognized as requiring knowledge but the court added, ". . . it seems to us that in order to prove the requisite knowledge, it is not necessary for the evidence to show positively that the person was notified of the unsafe condition of his premises, but that it is sufficient if it appears that the circumstances surrounding the act of commission or omission are such as 'evince a reckless disregard for the safety of others and a willingness to inflict the injury complained of.' (*Louisville etc. Ry. Co.* v. *Bryan,* 107 Ind. 51 . . . .)" (*Id.,* p. 189. See also *Keeley* v. *Industrial Acc. Com.* (1961) 55 Cal.2d 261, 266-270 [10 Cal.Rptr. 636, 359 P.2d 34]; and *Mercer Fraser Co.* v. *Industrial Acc. Com.* (1953) 40 Cal.2d 102, 115-120 [251 P.2d 955].) It may be that the foregoing definitions, though not referring to it, would include an intentional assault. Nevertheless the court in upholding the constitutionality of the provisions was at pains to distinguish the award so authorized as "really for additional compensation in the strict sense, and not for exemplary damages." (*Id.,* p. 193. See also *State Dept. of Corrections* v. *Workmen's Comp. App. Bd.* (1971) 5 Cal.3d 885, 888-891 [97 Cal.Rptr. 786, 489 P.2d 818].) It was early established that exemplary damages may be awarded for an oppressive or malicious assault upon the person. (Civ. Code, § 3294; *Bundy* v. *Maginess* (1888) 76 Cal. 532, 534 [18 P. 668].) ■ It may, therefore, be concluded that the Legislature did not intend the provisions now found in section 4553 to be a substitute for the relief which could be afforded for an intentional assault. It has been suggested that the penalties are provided to insure that the employer provide a safe place of employment. (See Larson, *op.cit.,* § 70.10, pp. 13-56/13-57.) Where there is an intentional assault it is of questionable relationship to general conditions of employment.

Finally, we note that even if the provisions of section 3359 are not intended to make a working partner or a working sole proprietor an employee who is liable for his wilful and provoked physical acts of

aggression to a fellow employee, as a cumulative remedy to workmen's compensation (§ 3601, subd. (a)(1)), the law has recognized the realities of the situation and on occasion has given the employer or a fellow employee a dual legal personality. (See *Duprey* v. *Shane* (1952) 39 Cal.2d 781, 793 [249 P.2d 8]; and *Hoffman* v. *Rogers* (1972) 22 Cal.App.3d 655, 661-662 [99 Cal.Rptr. 455]. Cf. *Sonberg* v. *Bergere, supra,* 220 Cal.App.2d 681, 682-683.) There is no public policy which requires that the realities of the situation be submerged so as to limit the cost of the employer's intentional assaults to such sums as may reasonably be spread over the cost of the services or goods his enterprise produces.

■ For the foregoing reasons we strictly construe the existing precedents, and hold that at least until an award of workmen's compensation benefits is made and satisfied (see *Jones* v. *Brown, supra,* 13 Cal.App.3d 513, 521; *Azevedo* v. *Abel, supra,* 264 Cal.App.2d 451, 460; and *Carter* v. *Superior Court, supra,* 142 Cal.App.2d 350, 358-359), or until a judgment is recovered in the civil suit for damages (see *Busick* v. *Workmen's Comp. Appeals Bd., supra,* 7 Cal.3d 967, 977-978), the remedies may be treated as cumulative or at least alternative. Neither *Scott* v. *Industrial Acc. Com., supra,* 46 Cal.2d 76, 83, or *Taylor* v. *Superior Court, supra,* 47 Cal.2d 148, 149 are deemed controlling because the determination of jurisdiction by either tribunal, as distinguished from a final judgment or award, would not necessarily preclude the exercise of jurisdiction by the other tribunal on a theory which is not mutually exclusive. In each of those cases the tort was simple negligence; the issue was whether the injury was work connected. An answer either way precluded a recovery in one forum or another. Here that is not necessarily the case. ■ There are facts which would justify a civil recovery even though the injury was work connected. The trial court properly denied the motion to stay the trial.

### III

The trial court also acted properly because of defendant's delay in urging his special defense. In *Busick* v. *Workmen's Comp. Appeals Bd., supra,* the court noted, "In *Taylor* [*Taylor* v. *Superior Court, supra,* 47 Cal.2d 148], however, the plaintiff took affirmative action to obtain the writ prohibiting further superior court proceedings. Here neither party made any objection to bringing the superior court action to trial, and petitioner prosecuted that action to final judgment fully aware that the Board action had been commenced some seven months before the complaint was filed in the superior court. As Witkin makes clear, 'In such

event the priority of jurisdiction loses its significance; *the first final judgment* becomes conclusive, even though it is rendered in the action which was filed later in time. "Where two actions involving the same issue are pending at the same time, it is not the final judgment in the first suit, but *the first final judgment,* although it may be rendered in the second suit, that renders the issue *res judicata* in the other court. . . ." (*Domestic & Foreign Pet. Co.* v. *Long* (1935) 4 Cal.2d 547, 562 . . . .)' (Original italics.) (4 Witkin, *supra,* Judgment, § 166, p. 3309.)" (7 Cal.3d at p. 977.)

In this case the record fails to show that either party ever sought an adjudication before the Workmen's Compensation Appeals Board, or took any action in those proceedings other than the filing of the application and the answer. According to the record before us the petitioner in these proceedings denied that the conditions for an award of compensation existed.

On the other hand, the defendant filed his answer in the civil suit without immediately requesting a stay. Nor did he so move when on January 4, 1973, real party in interest filed an at issue memorandum. So far as appears, no objection was interposed when on October 9, 1974, at a pretrial setting conference the court set the matter for trial on December 16, 1974. The parties apparently proceeded with discovery as, according to the record, the depositions of petitioner and his brother have been taken. It was only a few weeks prior to the trial when petitioner sought relief from the trial court. Under these circumstances, petitioner waived the right to insist on the prior right to determine the jurisdictional question, if it be deemed exclusive, before the administrative tribunal.

In *Sea World Corp.* v. *Superior Court* (1973) 34 Cal.App.3d 494 [110 Cal.Rptr. 232], the court recognized the following principles, "Precedential jurisdiction, unlike exclusive subject matter jurisdiction, may be the subject of waiver by the court having it. [¶] Concerning such priority of right a second principle applies, that a party litigant may waive, or be estopped to assert, lack of jurisdiction." (34 Cal.App.3d at p. 501.) In that case it appeared that the alleged employer's motion was not to stay proceedings in the superior court because of the claimed prior right of the Workmen's Compensation Appeals Board to decide the question, but was a motion for summary judgment calling for determination of the very issue which, after a denial of his motion for summary judgment, the alleged employer by his application for a writ sought to have the superior court prohibited from hearing. The court denied the writ (*id.,* at p. 503).

In this case there was no request for any such relief from the superior court, merely a motion to stay proceedings. Nevertheless the fact that the alleged employer, who could have moved for a determination before the administrative board at anytime after February 27, 1970, elected to wait until four weeks before the trial, some two years and eight months after he filed his answer, to secure a stay, and the fact that he participated, without objection, in other proceedings before the superior court, including setting the case for trial, demonstrate that the trial court was warranted in finding that the petitioner had waived and was estopped to assert the precedential jurisdiction of the administrative body.

The alternative writ is discharged and the petition is denied.

Molinari, P. J., and Elkington, J., concurred.