Harry BARTH, on Behalf of Himself and All Others Similarly Situated, Plaintiff,

v.

The FIRESTONE TIRE AND RUBBER COMPANY, a corporation, Does One (1) Through One Thousand (1,000), Inclusive, Defendants.

No. C–85–20534–RPA.

United States District Court, N.D. California.

Sept. 1, 1987.

---

Stemple & Boyajian, Century City, Cal., Deason, Martin & Harrison, Los Angeles, Cal., for plaintiff.

McCutchen, Doyle, Brown & Enersen, San Jose, Cal., for defendants.

## REVISED ORDER RE MOTION TO DISMISS

AGUILAR, District Judge.

The defendant Firestone Tire and Rubber Company ("Firestone") brings this motion to dismiss the Second Amended Complaint (the "Complaint") in this putative class action pursuant to Fed.R.Civ.P. 12(b)(6). The defendant argues that the plaintiff's claims here are precluded by the exclusivity provisions of the California Workers' Compensation system. Alternatively, the defendant asserts that the plaintiff fails to state a claim upon which relief can be granted.

The Court must state, preliminarily that this case presents troubling and serious questions that go to the very heart of American jurisprudence. It presents no questions that are susceptible to easy answers, and the plaintiff describes a tragic fact situation.

In this, as in all motions to dismiss, the Court accepts as true all well pleaded allegations in the Complaint, and it views all facts and makes all inferences in the light most favorable to the party opposing the motion. *Jenkins v. McKeithen*, 395 U.S. 411, 421, 89 S.Ct. 1843, 1848–49, 23 L.Ed.2d 404 (1969); *T.W. Electrical Service, Inc. v. Pacific Electrical Contractors Association*, 809 F.2d 626, 631 (9th Cir.1987). Viewing the complaint in that light, the plaintiff asserts the following facts.

## FACTS

Defendant Firestone opened a tire manufacturing facility in Salinas California, in 1963. That Salinas plant used various chemical compounds to manufacture tires. Those chemical compounds included benzene, other heavy metal compounds and certain other industrial toxins.

Subsequent to the opening of the plant, officials determined that exposure to benzene and the other heavy metals used here was highly correlated to the subsequent development of certain diseases. The plaintiff asserts that the exposure here could lead to leukemia, cancer, respiratory disease and injury, diseases of the central nervous system, kidneys, liver and other

organs, injuries to the immune system, and injuries to the reproductive systems of the workers so as to lead to birth defects in the workers' progeny. There is an extended latency period between exposure to the substances and the development of clinically diagnosable symptoms. Firestone possessed both actual and constructive knowledge of the harmfulness of the substances.

The plaintiff alleges that federal and state laws and regulations prohibit the exposure of unprotected workers to the hazardous substances at issue here. He asserts that federal and state laws required Firestone to provide the workers with protective clothing, safety devices and safe premises. Pursuant to the law, Firestone should have eliminated the use of all the hazardous substances or provided its workers with protective equipment or procedures.

The plaintiff alleges that Firestone neither discontinued the use of the hazardous substances nor provided its workers with any protective equipment or procedures. Instead, he alleges that Firestone fraudulently concealed the information and the danger from its workers. Firestone allegedly disguised the use of the hazardous substances, denied that it was using these toxic substances and intentionally misinformed its employees about the safety and identity of the substances. Firestone intentionally misrepresented to its workers that there were none of the hazardous substances present in the work place and that no safety precautions were needed. The plaintiff asserts that Firestone did this with full knowledge of the health danger presented by the substances.

The plaintiff thus alleges that Firestone exposed all of its manufacturing employees to toxic substances without their consent. Firestone allegedly continued this practice from 1963 until 1981, when Firestone closed the plant. The plaintiff estimates that Firestone's conduct exposed at least 5,000 employees to the toxic substances.

The plaintiff worked in the plant from 1963 until he resigned in 1980, and he alleges that Firestone's conduct exposed him to the toxic substances. The plaintiff does not assert the existence of any presently diagnosable physical injury. He also seeks to assert claims on behalf of all the exposed workers, but the Court does not here reach the class issues.

Through this Company, the plaintiff asserts the following claims: 1) fraudulent active concealment and misrepresentation; 2) battery; 3) intentional infliction of emotional distress; 4) unfair and deceptive trade practices; and 5) equitable relief.

The plaintiff does not seek compensation for an injury that can be clinically diagnosed under the present state of medical science. Instead, he seeks the creation of a medical monitoring fund to provide an underlying remedy for the entire class. The plaintiff also seeks other equitable relief and punitive damages.

The Court previously dismissed two earlier filed complaints in this action. It will now address the motion to dismiss this Complaint.

*Discussion of the law*

### I. The existence of an injury

Defendant Firestone moves to dismiss under Rule 12(b)(6) on the ground that the plaintiff failed to allege a present injury. This issue becomes a threshold one because many of the following jurisdictional issues depend on the resolution of whether the Complaint alleges an injury. For that reason, the Court's analysis will begin with this question.

The Complaint does not allege any symptom of injury which can be clinically diagnosed at this time. Instead, he alleges two forms of physical injury. He asserts an injury to his immune system that renders him more susceptible to developing various forms of cancer. He further asserts an injury purely through the increased risk of cancer. The plaintiff also asserts injury through fear and emotional distress. Finally, the plaintiff asserts injuries on behalf of the class on the ground that it is a statistical and medical certainty that some members of the class will develop the resultant diseases.

The plaintiff argues, and this Court agrees, that many of the problems present-

ed are due to failures in the current state of medical science and in the development of the legal system. Current medical science cannot state whether or how exposure to toxic chemicals affects individuals. It cannot yet detect the present effect of the exposure, and, therefore, it cannot supply to the legal system information concerning the nature of present injury or of causation. In the absence of that information, the legal system now struggles to adapt.

■ The Complaint alleges that the plaintiff has suffered a direct injury to his immune system and that the diseases are currently present in the plaintiff in their latency stage. This Court must accept as true all well pleaded allegations in the Complaint for the purposes of this motion to dismiss, and the Court cannot address problems of proof at this stage in the litigation. Accordingly, the Court accepts that the plaintiff has suffered a direct injury to his immune system and a further injury through the presence of diseases in their latency period. The Court further accepts that this injury is a current, physical injury. As such, those allegations will suffice to state an injury.

The plaintiff also clearly asserts a claim for emotional distress. He alleges that he suffers from fear of contacting serious and/or lethal diseases as a result of his exposure to the toxic chemicals at the Firestone plant. These emotional injuries state a present injury upon which some claims for relief may be based.

The plaintiff's claim for injuries based directly on an increased risk of contacting cancer present a much more difficult question for this Court. The plaintiff cannot assert that he will contact cancers or other diseases from the alleged exposure. However, he does claim that he now faces a greatly increased risk of contacting those diseases.

This issue goes to the very heart of our tort system, and it divides courts and commentators. The tort system evolved to redress the wrongs of a society where injuries were much more direct. The issues of lengthy latency periods and increased risks of cancers are relatively new to our system

of laws. The greatest lesson that we can draw from the common law of torts to apply here is that the system must evolve to meet the needs of society.

According to Professors Prosser and Keeton:

The administration of the law becomes a process of weighing the interests for which the plaintiff demands protection against the defendant's claim to untrammeled freedom in the furtherance of defendant's desires, together with the importance of those desires themselves. When the interest of the public is thrown into the scales and allowed to swing the balance for or against the plaintiff, the result is a form of 'social engineering' (Pound, Theory of Social Interests, 1920, 4 Pub.Am.Soc.Society 15). A decision-maker might deliberately seek to use the law as an instrument to promote that 'greatest happiness of the greatest number' (Jeremy Bentham's phrase, although an acknowledged translation from an Italian source.), or instead might give greater emphasis to protecting certain types of interests of individuals as fundamental entitlements central to an integrity of person that the law upholds above all else. This process of 'balancing the interests' is by no means peculiar to the law of torts, but it has been carried to its greatest lengths and has received its most general conscious recognition in this field.

Prosser and Keeton on the Law of Torts 16–17 (5th ed. 1984) [Some footnotes omitted, others included within parentheses.].

California law has neither recognized nor specifically barred recognition of the increased risk of cancer as a present injury. Some case law holds that the increased risk of disease, by itself, is not actionable, and that the plaintiff must wait until he develops the disease. *See Rheingold v. Squib & Sons, Inc.*, 74 Civ. 3420 (S.D.N.Y.1975).

The Court here notes the troubling and complex issues raised regarding the nature of a legal injury. In this case, the plaintiff has already pled a current legally cognizable injury by alleging damage to his immune system and the presence of diseases

in their latency period. That injury sufficiently supports the legal claims asserted here. Accordingly, for the purposes of this motion, this Court need not decide whether the increased risk of contacting cancer constitutes a legal injury. For that reason, the Court will not rule on the issue of whether the risk constitutes a legal injury. The defendant may raise this issue again through the appropriate motion should it become relevant. .

## II. Workers' compensation preemption

The defendants argue that the California workers' compensation statutes provide plaintiff's full and exclusive remedy in this action. The plaintiff argues that this case falls outside of the workers' compensation system both because it qualifies for a legislatively authorized exeption to that system and because the nature of the injuries and conduct complained of here remove the case entirely from the ambit of the Workers' Compensation system.

The plaintiff here seeks to fit within an exception or an exclusion to the California Workers' Compensation Act. Calif.Labor Code § 3600, et seq.[1] In ruling upon the maintenance of the plaintiff's claims, the Court's obligation to broadly interpret the Complaint in order to effectuate substantial justice may conflict with the competing requirement to liberally construe the scope of the Workers' Compensation Act.

To help resolve that conflict, the Court will consider the purpose behind the Work-

ers' Compensation Act. The California Supreme Court stated that the Act's underlying policy is to "balance[ ] the advantages of relatively swift and certain compensation against the detriment to the employee of prohibiting an action at law." *Foster v. Xerox*, 40 Cal.3d 306, 311, 219 Cal.Rptr. 485, 487, 707 P.2d 858, 860 (1985).

The California workers' compensation system is designed to provide relatively quick compensation for job related injuries in return for a limit on the remedies which might otherwise be available. The California Legislature intended the system to be comprehensive, and the courts should be hesitant to permit any exceptions to that comprehensive system.

Preliminarily, the Court must here decide whether this action falls within the ambit of the workers' compensation system. Section 3600 provides generally that the workers' compensation system applies to any injury sustained by an employee arising out of and in the course of employment.[2] The Legislature has provided several exceptions to this general exclusivity rule, but each of those exceptions begins with the premise that the Workers' Compensation system would otherwise apply to the situation at issue. The plaintiff here attacks the initial premise by stating that the injuries and conduct complained of here are beyond the scope of the system entirely. The plaintiff argues, in essence, that the facts alleged here create an exclusion to the system, rather than an exception to the system.[3]

---

1. All references are to the California Labor Code unless otherwise noted.

2. Section 3600 provides in relevant part:

    (a) Liability for the compensation provided by this division, in lieu of any other liability whatsoever to any person except as otherwise specifically provided in Sections 3602, 3706, and 4558, shall, without regard to negligence, exist against an employer for any injury sustained by his or her employees arising out of and in the course of the employment and for the death of any employee if the injury proximately causes death, those cases where the following conditions of compensation occur:

    (1) Where, at the time of the injury, both the employer and the employee are subject to the compensation provisions of this division.

    (2) Where, at the time of the injury, the employee is performing service growing out of and incidental to his or her employment and is acting within the course of his or her employment.

    (3) Where the injury is proximately caused by the employment, either with or without negligence.

3. The Court uses the term exclusion to refer to a denial of access to the workers' compensation system. Once a court determines that the system applies to a specific situation, that situation may then qualify for an exception which will remove it from the system. This is roughly analogous to the distinction between exclusions and exceptions to the hearsay rules under the Federal Rules of Evidence, 28 U.S.C. Rules 801–804.

## A. Exclusion

■ The plaintiff argues that the physical injuries alleged here are not compensable under the workers' compensation statutes because they involve no present impairment of earning capacity and no clearly perceptible manifestation of physical dysfunction or disease. He argues that the civil wrong alleged here lies outside the contemplation of the workers' compensation system and should be redressable at law even though perpetrated in an industrial setting.

California case law has consistently excluded certain claims from the workers' compensation system because the nature of those claims removes them entirely from the ambit of the workers' compensation system. *See e.g., Renteria v. County of Orange,* 82 Cal.App.3d 833, 147 Cal.Rptr. 447 (1978). However, the workers' compensation system was significantly amended in 1982. This Court must determine now whether the nature of the claim asserted in this action removes the claim from the ambit of the workers' compensation system, as the legislature amended that system in 1982. The Court concludes that the relevant inquiry following the 1982 amendments remains whether the civil wrong complained of fits within "an entire class of civil wrongs outside the contemplation of the workers' compensation system." *Young v. Libbey–Owens Ford Co.* 168 Cal. App.3d 1037, 1042, 214 Cal.Rptr. 400, 403 (1985) quoting *Renteria,* 82 Cal.App.3d at 841, 147 Cal.Rptr. at 451.

The legislature amended the workers' compensation act in 1982, with the amendments to become effective the next year. Pre–1983, the statute provided that workers' compensation was the exclusive remedy for accidents and injuries arising out of and in the course of employment. The courts, however, carved out exceptions and permitted common law tort causes of action in particular circumstances. *See e.g., Johns–Manville Products Corp. v. Superior Court,* 27 Cal.3d 465, 165 Cal.Rptr. 858, 612 P.2d 948 (1980), and *Magliulo v. Superior Court,* 47 Cal.App.3d 760, 121 Cal. Rptr. 621 (1975).

The holding of the court in *Renteria v. County of Orange,* 82 Cal.App.3d 833, 147 Cal.Rptr. 447 (1978), is particularly instructive to this Court in the action now before it. In *Renteria,* the court found an implied exception to the then existing exclusivity provision and permitted the plaintiff to state a cause of action for intentional infliction of emotional distress. *Id.* at 835, 147 Cal.Rptr. 447; then § 3600 et seq. The *Renteria* court analyzed the legislative intent in creating the workers' compensation system and the nature of the claimed injury. The court then decided that the type of injury asserted was beyond the contemplation of the legislature at the time that it created the workers' compensation system. *Id. See also Young,* 168 Cal.App.3d 1037, 214 Cal.Rptr. 400, *Iverson v. Atlas Pacific Engineering,* 143 Cal.App.3d 219, 191 Cal. Rptr. 696 (1983), *McGee v. McNally,* 119 Cal.App.3d 891, 174 Cal.Rptr. 253 (1981).

In *Renteria,* 82 Cal.App.3d 833, 147 Cal. Rptr. 447, decided prior to the Legislature's 1982 amendments to the workers' compensation system, the court stated:

"While it is possible to believe that the Legislature intended that employees lose their right to compensation for certain forms of negligently or accidentally inflicted physical injuries in exchange for a system of workers' compensation featuring liability without fault, compulsory insurance, and prompt medical care, it is much more difficult to believe that the Legislature intended the employee to surrender all right to any form of compensation for mental suffering caused by extreme and outrageous misconduct by an employer. It would indeed be ironic if the Workers' Compensation Act, created to benefit employees, were to be interpreted to shield the employer from all liability for such conduct. We decline to interpret it in this fashion."

*Id.* 82 Cal.App.3d at 841, 147 Cal.Rptr. at 452, fn. omitted.

Pre–1983 California cases have held that non-physical injuries, such as those flowing from the tort of intentional infliction of emotional distress, did not fit within the framework of the workers' compensation

system. In so deciding, courts have been guided, in part, by § 3208's definition of an injury[4] and by commentator Larson's observation that, "[i]f the essence of the tort, in law, is non-physical, and if the injuries are of the usual non-physical sort, with physical injury being at most added to the list of injuries as a makeweight, then the suit should not be barred." 2A Larson, *Workmen's Compensation Law,* § 68.34(a). In order to avoid immunizing employers from liability for conduct which causes non-physical harm, California courts have generally concluded that an employee's action for intentional infliction of emotional distress against an employer is not contemplated as an injury under workers' compensation laws and therefore is not precluded by the exclusive remedy provisions of the amended statute.

A California court addressed the question of whether, following the 1982 amendments, a plaintiff could state a claim at law for slander arising out of and in the course of employment. *Howland v. Balma,* 143 Cal.App.3d 899, 192 Cal.Rptr. 286 (1983). The *Howland* court concluded that the 1982 amendments did not preclude other exceptions or exclusions to the workers' compensation system. The court looked to the nature of the injury to determine whether it resulted from a risk of employment or whether it was in any manner compensable under the workers' compensation act. *Id.* at 904–05, 192 Cal.Rptr. 286. The *Howland* court concluded that the slander alleged there was beyond the contemplation of the legislature at the time that it adopted the 1982 amendments. Therefore, the court held that the plaintiff could maintain an action at law, apart from the remedies available to him through the workers' compensation system for then existing physical injuries arising from the same incident.

*Howland* is most instructive to this action because in *Howland,* the court, acting subsequent to and pursuant to the 1982 amendments, performed an exclusion analysis similar to that used before the 1982 amendments. This Court finds further support for that analysis from the fact that § 3600, as amended except for the exceptions set out in §§ 3602, 3706 and 4558, restates pre–1983 workers' compensation exclusivity.[5]

California case law thus holds that the 1982 amendments do not constitute the only work related injuries which are not covered by the exclusivity provisions of the workers' compensation system. This Court must now determine whether the plaintiff's allegations here constitute another such situation.

The plaintiff in this case suffers no presently diagnosable physical injury. He does not yet suffer from symptoms of the cancers or other diseases which are correlated to the exposure that he allegedly suffered. In this case, as in above cited California cases, the plaintiff asserts a claim for intentional infliction of emotional distress. Also as in those cases, the plaintiff here asserts some physical injury. This action, however, presents two complicating issues in this regard.

First, the plaintiff's physical injuries here are not clinically diagnosable. Second, the plaintiff's emotional distress stems primarily from the fear of contacting further physical injury. These two factors, while they may complicate further proceedings in this case, do not complicate an exclusion analysis under California case law. For the purposes of an exclusion analysis, the Court need not and should not distinguish between a non-physical injury and an alleged injury for which symptoms

---

4. Section 3208 provides in full:

"Injury" includes any injury or disease arising out of the employment, including injuries to artificial members, dentures, hearing aids, eyeglasses and medical braces of all types; provided, however, that eyeglasses and hearing aids will not be replaced, repaired, or otherwise compensated for, unless injury to them is incident to an injury causing disability.

5. Section 3706 generally provides for damages when the employer does not secure payment for compensation, and section 4558 provides for damages in the special situation where the employer has removed or failed to provide power press guards. Section 3602 codifies certain common law exceptions to workers' compensation and is discussed throughout this opinion.

are not clinically diagnosable. Neither situation presents an injury which is compensable under the workers' compensation system because that system was not designed to remedy the type of injury there asserted.

Defendant Firestone here asserts that the Legislature intended to include this type of situation in the workers' compensation system. The defendant further argues that the workers' compensation system will provide an adequate remedy. The defendants cite *J.T. Thorp, Inc. v. WCAB*, 153 Cal.App.3d 327, 200 Cal.Rptr. 219 (1984), for the proposition that the workers' compensation system can provide a remedy for the plaintiff's alleged injury here.

The Court finds that the *Thorp* case presents a significantly different situation and offers little guidance to this Court in ruling on the instant motion. In *Thorp*, the plaintiff suffered from a workplace related injury which had manifested itself in clinically diagnosable symptoms but which had not yet physically disabled the plaintiff. The court there held that the employer was responsible to pay for continuing X-rays and other medical expenses to cure and relieve him of the effects of the injury. The case is premised on the existence of an injury as defined by § 3208.

In this case, there is no presently diagnosable injury, and as discussed above, the plaintiff does not yet allege an injury as defined by § 3208. This case would present a very different issue if the plaintiff currently suffered from diagnosable symptoms. As described above, due to the lack of presently diagnosable symptoms or disease, the plaintiff here does not suffer from an injury under § 3208. Those differ-

ences distinguish this case from *Thorp* for the purposes of this motion.

California law provides for exclusive workers' compensation coverage for physical injuries which are accompanied by emotional distress. *Hollywood Refrigeration Sales Co. v. Superior Court*, 164 Cal. App.3d 754, 759, 210 Cal.Rptr. 619 (1985), *see also* discussion under section *II. A. Exclusion*, above. In this case, however, the plaintiff's physical injuries do not fit within the definition of injury provided in the workers' compensation system, and are not there remediable.

The physical injuries alleged here involve no present impairment of earning capacity and no clearly perceptible manifestation of physical dysfunction or disease. Accordingly, the Court finds that the civil wrong alleged here lies outside the contemplation of the Legislature at the time that it passed and amended the workers' compensation system. For that reason, the alleged civil wrong falls entirely beyond the scope of the workers' compensation system and comprises an exclusion to that system. Accordingly, the Court hereby DENIES the motion to dismiss the complaint to the extent that it is based on the exclusivity of workers' compensation.

### B. Statutory Exceptions

Alternatively, the Court analyzes the applicability of the statutory exceptions to the workers' compensation system. California Labor Code § 3602(b) sets forth three major exceptions to the general rule of exclusivity of remedy.[6] Each of those exceptions permits an injured party to bring a cause of action at law. The plaintiff as-

---

**6.** Section 3602(b) provides in full:

An employee, or his or her dependents in the event of his or her death, may bring an action at law for damages against the employer, as if this division did not apply, in the following instances:

(1) Where the employee's injury or death is proximately caused by a willful physical assault by the employer.

(2) Where the employee's injury is aggravated by the employer's fraudulent concealment of the existence of the injury and its connection with the employment, in which case the employer's

liability shall be limited to those damages proximately caused by the aggravation. The burden of proof respecting apportionment of damages between the injury and any subsequent aggravation thereof is upon the employer.

(3) Where the employee's injury or death is proximately caused by a defective product manufactured by the employer and sold, leased, or otherwise transferred for valuable consideration to an independent third person, and that product is thereafter provided for the employee's use by a third person.

**1474**

serts that he meets two of the three exceptions.[7]

### 1. Willful physical assault

■ § 3602(b)(1) empowers an employee to bring an action at law for damages "where the employee's injury or death is proximately caused by a willful physical assault by the employer." The plaintiff here argues that Firestone assaulted him by compelling him to come into contact with toxic substances without his consent. Firestone asserts that the Legislature designed this exception to address the situation where an employer physically assaults the employee by striking him with a fist or by kicking him and that the exception should be narrowly construed.

It is clear that this exception applies to cases where an employer "beats up" an employee. *See Magliulo v. Superior Court In & For C. & C. of San Francisco* 47 Cal.App.3d 760, 121 Cal.Rptr. 621 (1975). It is also clear that courts should liberally construe complaints in favor of the exclusive application of workers' compensation proceedings. *Iverson v. Atlas Pacific Engineering* 143 Cal.App.3d 219, 191 Cal. Rptr. 696 (1983). However, the statute clearly uses non-exclusive language to limit the term "willful physical assault." The issue presented here becomes whether the alleged conduct of the defendant constituted a "willful physical assault."

This exception follows a judicially created exception enunciated in *Magliulo*. The plaintiff there suffered injury when her boss hit her and threw her to the ground. The *Magliulo* court held that a plaintiff could maintain an action at law for the assault, holding that an intentional assault is not a risk or condition incident to employment. *Id.* 47 Cal.App.3d at 770, 121 Cal.Rptr. 621. *Magliulo* relied on *Conway v. Globin*, 105 Cal.App.2d 495, 233 P.2d 612 (1951), where the court reversed the dismissal of an action at law resulting from an

employer's intentional physical attack. The *Conway* court concluded:

> For the reasons herein stated we conclude that the allegations in the complaint that an employment relationship existed is immaterial, since the further allegations that the plaintiff's injuries resulted from defendant employer's willful attack upon plaintiff, allege an injury which is not a risk or condition of the employment, and hence one not arising out of the employment.

*Id.* at 498, 233 P.2d 612.

The Court cannot here hold that the act of an employer in deliberately mislabelling containers and misrepresenting the contents and safety of those containers, thereby intentionally exposing workers to dangerous and potentially lethal toxic substances, constitutes a risk or condition of employment. However, for the purposes of this motion, the Court must here determine the separate issue of whether Firestone committed a willful physical assault as defined by § 3602(b)(1).

The California Supreme Court supplied this Court some guidance on the definition of a willful physical assault when it stated:

> While we do not purport to find in them a tidy and consistent rationale, we perceive in *Magliulo, Meyer [v. Graphic Arts International Union,* 88 Cal. App.3d 176, 151 Cal.Rptr. 597 (1979) ], and *Unruh [v. Truck Insurance Exchange,* 7 Cal.3d 616, 102 Cal.Rptr. 815, 498 P.2d 1063 (1972) ] a trend toward allowing an action at law for injuries suffered in the employment if the employer acts deliberately for the purpose of injuring the employee ...

*Johns–Manville Products Corp. v. Superior Court,* 27 Cal.3d 465, 476, 165 Cal.Rptr. 858, 612 P.2d 948 (1980).

The plaintiff analogizes Firestone's conduct to willfully or maliciously placing or throwing a caustic chemical at a person with the intent to do harm. Such conduct constitutes assault with caustic chemicals

---

**7.** The plaintiff seeks to fit within subsections (1) [the "willful physical assault" exception] and (2) [the "fraudulent concealment" exception] of § 3602(b). The plaintiff does not claim to fit within subsection (3), which provides an exception for the use of defective products obtained from a third person.

pursuant to California Penal Code § 242, and battery pursuant to Cal.Penal Code § 244. He argues that Firestone's conduct thus constitutes a willful physical assault. Firestone asserts that their conduct amounts to no more than a mere failure to assure the safety of the workplace and that it cannot amount to a willful physical assault.

The Court must carefully analyze the allegations in order to determine whether the Complaint asserts facts which constitute a willful physical assault. The Complaint alleges that Firestone intentionally mislabelled certain containers in order to disguise the fact that they contained toxic substances. Firestone then placed these containers out into the workplace and ordered its employees to work with the substances. Firestone intentionally lied in response to direct questions from employees about the contents and safety of these containers, and Firestone closed the plant without ever informing the employees that they had been exposed to toxic substances.

The facts as alleged constitute egregious misconduct on the part of Firestone. However; the Court cannot find that these facts constitute a willful physical assault. The defendant's acts were not undertaken "for the purpose of injuring the employee." *Johns–Manville*, 27 Cal.3d at 476, 165 Cal. Rptr. at 865, 612 P.2d at 955. Furthermore, the wrong alleged here is no more of an assault than was the wrong alleged in *Johns–Manville*, and the Court there did not choose to hold that that conduct constituted a willful physical assault. Accordingly, the Court hereby finds that the plaintiff has not asserted facts sufficient to bring it within § 3602(b)(1).

### 2. *Aggravation of injury due to fraudulent concealment*

■ § 3602(b)(2) permits an employee to bring an action at law, "Where the employee's injury is aggravated by the employer's fraudulent concealment of the existence of the injury and its connection with the employment." The Legislature sought to codify the judicially created exception result-

ing from *Johns–Manville*, 27 Cal.3d 465, 165 Cal.Rptr. 858, 612 P.2d 948.

The *Johns–Manville* court stated:

In the present case, plaintiff alleges that defendant fraudulently concealed from him, and from doctors retained to treat him, as well as from the state, that he was suffering from a disease caused by ingestion of asbestos, thereby preventing him from receiving treatment for the disease and inducing him to continue to work under hazardous conditions. These allegations are sufficient to state a cause of action for aggravation of the disease, as distinct from the hazards of the employment which caused him to contract the disease.

\*   \*   \*   \*   \*   \*

[I]t is inconceivable that plaintiff contemplated defendant would, as he alleges, intentionally conceal the knowledge that he had contracted a serious disease from the work environment, thereby aggravating the disease, and by accepting employment he would surrender his right to damages for such conduct.

*Id.* at 477, 165 Cal.Rptr. at 865, 612 P.2d at 955.

Here, the plaintiff has alleged: 1) he has suffered an injury; 2) Firestone knew that exposure to the toxic substances at issue would lead to the injury complained of; 3) Firestone concealed the source of the alleged injury; 4) by concealing its knowledge of the injury, Firestone effectively concealed the existence of the injury because the alleged injury has no presently diagnosable symptoms; 5) the concealment prevented the plaintiff from receiving proper medical care and advise concerning the injury; and 6) Firestone's conduct led to continued exposure, and the cumulative exposure aggravated the initial injury.

This case differs from *Johns–Manville* in that the instant plaintiff does not suffer from clinically diagnosable symptoms. However, as discussed above, the plaintiff has sufficiently alleged the existence of an injury for the purposes of this motion. In *McDonald v. Superior Court (Flintkote Co.)*, 180 Cal.App.3d 297, 225 Cal.Rptr. 394

(1986), the court discussed an analogous situation and stated:

> We realize that with asbestos-related diseases plaintiff is faced with the difficult prospect that the injury may manifest itself many years after the initial injury occurred. [Citation omitted.] However, this does not preclude a plaintiff from alleging that a job-related injury did occur prior to his recognition of its manifestation, and his employer knew he had contracted a job-related injury, but concealed that knowledge from him, thereby aggravating the injury.

*Id.* at 303, n. 7, 225 Cal.Rptr. at 398, n. 7.

The *McDonald* complaint was dismissed because the plaintiff did not allege that Flintkote knew and concealed that the plaintiff suffered from the disease, thereby aggravating the injury. "Such knowledge of an existing work-related injury is essential to establish a claim under subdivision (b)(2)." *Id.* at 303, 225 Cal.Rptr. at 398, citing *Foster v. Xerox Corp.*, 40 Cal.3d 306, 312, 219 Cal.Rptr. 485, 488, 707 P.2d 858, 861 (1985).

The plaintiff here has alleged specifically that each of the defendants knew of the existence of the injury and fraudulently concealed that existence. Accordingly, the plaintiff has sufficiently pled the existence of a claim for fraudulent concealment under § 3602(b)(2), *Johns–Manville* and its progeny.

In its attempt to render consistent the potentially conflicting policies behind the comprehensive nature of the workers' compensation system and the desire to provide a forum for worthy legal claims, the Court derives comfort from the California Supreme Court's statement that:

> We conclude the policy of exclusivity of workers' compensation as a remedy for injuries in the employment would not be seriously undermined by holding defendant liable for the aggravation of this plaintiff's injuries, since we cannot believe that many employers will aggravate the effects of an industrial injury by not only deliberately concealing its existence but also its connection with the employment. Nor can we believe that the Legislature in enacting the workers' compensation law intended to insulate such flagrant conduct from tort liability.

*Johns–Manville,* 27 Cal.3d at 478, 165 Cal. Rptr. at 866, 612 P.2d at 956.

Based on the allegations of the Complaint, the Court hereby finds that the plaintiff fits within the exception codified in § 3602(b)(2) and, accordingly, finds that the plaintiff may maintain an action at law for damages resulting from the fraudulent concealment of the aggravation of injuries.

### III. Plaintiff's claim for equitable relief

■ The plaintiff's final basis for this Court's jurisdiction relies on his fifth claim for "equitable relief." The plaintiff claims that he faces an irreparable threat to his health that can be mitigated only by the creation of a medical monitoring fund. That fund would provide for a Medical Monitoring Program which will gather and forward to treating physicians information relating to the diagnosis and treatment of diseases which may result from the plaintiff's exposure to toxins.

The plaintiff relies heavily upon the class nature of this Complaint to state his claim for equitable relief. He argues that most employees will never know that they have been exposed to the toxins unless the Court acts to create a fund that will locate the exposed workers and will aid in the early diagnosis and treatment of any resultant diseases. The Court has not certified a class in this action. Accordingly, the Court must determine whether it can consider the class nature of the complaint for the purposes of ruling upon this motion to dismiss.

The Court is faced with a potential conflict between the standards and policies for Rules 12(b)(6) and 23. Generally, courts accept as true all allegations in a complaint for the purposes of ruling on a motion to dismiss pursuant to Rule 12(b)(6). However, courts also generally consider only the claims of a named plaintiff in ruling on a motion to dismiss a class action complaint prior to class certification.

In this case, the Complaint alleges that many of the class members will never

know of their exposure to toxic substances without the equitable relief sought here. The plaintiff asserts that these potential class members will not be able to receive the prompt medical care that may prolong their productive lives absent knowledge of their exposure. The Court finds that the class allegations in this case constitute such an integral part of the claim for equitable relief that the Court should consider them in ruling upon this motion to dismiss.

The long latency period between exposure and the development of diagnosable symptoms combines with the putative class members' lack of knowledge of their exposure to effectively deprive them of any remedy under the workers' compensation system. The plaintiff alleges, and we must accept as true, that most of the putative class members will never know that their individual diseases might have been caused by conditions at the Salinas Firestone plant.

It is disingenuous for the defendant to argue that Barth's knowledge should preclude him from bringing this action. The interests of the class can only be protected by someone who possesses knowledge of the alleged exposure. For the defendant to argue that as soon as one receives that knowledge money damages become sufficient places the plaintiff and the class in an untenable "Catch 22" situation—only a person with knowledge can bring suit and only someone without knowledge will have the necessary standing. This Catch 22 situation is analogous to mootness situations where the issue is capable of repetition, yet evades review. *See Southern Pacific Terminal Co. v. Interstate Commerce Commission*, 219 U.S. 498, 515, 31 S.Ct. 279, 283, 55 L.Ed. 310 (1911); *Sample v. Johnson*, 771 F.2d 1335 (9th Cir.1985).

The Court cannot preclude the putative class from seeking the relief it desires on the ground that the named plaintiff already possesses the knowledge that underlies the class remedy. Furthermore, the Court notes that the named plaintiff will likely benefit from the equitable relief sought in

that the increased pool of information may aid in the diagnosis or treatment of any disease that the plaintiff may later incur and may ease his emotional distress.

The Court previously ordered that the plaintiff establish: 1) that he has no adequate remedy at law; 2) that he will suffer irreparable harm if the requested relief is not granted; and 3) that he has exhausted all available legal remedies.

### A. Adequacy of remedy at law

■ The Complaint alleged that the putative class members have no adequate remedy at law because their claims are not compensable under the workers' compensation system. It further alleges that the putative class has no adequate remedy at law because monetary damages cannot compensate for the continuing nature of the injury.

The Court has found above that the civil wrong alleged here does not fall within the ambit of the workers' compensation system. Accordingly, the plaintiff has alleged, for the purposes of this motion to dismiss, that there is no adequate remedy available under that system.

The Court has also found, however, that the plaintiff's action at law survives this motion. The plaintiff asserts that this action at law cannot lead to an adequate remedy because damages cannot adequately compensate the putative class. He argues that only a monitoring program can prevent the manifestation of harms which will not appear until after a lengthy latency period and which may be preventable if diagnosed before their manifestation. The thrust of the claim for equitable relief calls for the establishment and maintenance of a monitoring program which will pool and share knowledge about the results of the alleged exposure and will provide for diagnosis and preventive medical advice.

Firestone asserts that monetary damages will provide an adequate remedy at law and that each allegedly exposed individual will become eligible for the remedy following the manifestation of symptoms.[8]

8. Section 4553 provides for the increase by one-

half of the amount of compensation "where the

## 1478

Firestone does not address the thrust of the plaintiff's assertion that a claim lies in equity prior to the development of diagnosable symptoms.

It is clear that no remedy at law exists that would permit a court to fashion an underlying remedy such as the medical monitoring fund sought here. The plaintiff may seek other forms of remedy at law, but the monitoring program sought here is not a remedy available at law.

### B. Irreparable harm

The issue of whether the putative class would suffer irreparable harm absent the equitable relief sought is closely related to the issue of whether the plaintiff has sufficiently alleged an injury. See discussion under section I, above. Because this Court has found that the plaintiff has pled an injury, the Court may look to the irreparable nature of that injury in the absence of the equitable relief sought.

The Complaint alleges that the plaintiff and the putative class has already suffered great irreparable injury. It further alleges that, in the absence of equitable relief, the plaintiff will suffer harms such as: misdiagnosis and mistreatment of plaintiff and the putative class; further unknowing exposure to the same toxins; and loss of legal rights through the failure to recognize their symptoms as the result of toxic exposure while employed at Firestone.

The above harm and risk to human life constitutes the very essence of irreparable harm. Postponing or foregoing action that, if taken now, might result in the saving of human life would constitute irreparable harm in the eyes of this Court. The plaintiff has alleged such a situation, and the Court hereby finds that the Complaint asserts the requisite irreparable harm.

### C. Exhaustion of legal remedies

As discussed above, the Court finds that no adequate legal remedies exist for the creation of the medical monitoring fund. Accordingly, the Court finds that the plaintiff need not specifically exhaust legal remedies by filing unnecessary and futile pleadings in search of such a remedy. "The law neither does nor requires idle acts." Cal.Civil Code § 3532.

Accordingly, and based on the good cause described above, the Court hereby finds that the plaintiff has alleged the requisite elements to permit him to maintain this claim for equitable relief. The Court hereby DENIES Firestone's motion to dismiss the fifth claim for equitable relief.

### CONCLUSION

Guided by its paramount interest in dispensing substantial justice and with good cause appearing therefor, the Court hereby GRANTS in part and DENIES in part the defendant's motion to dismiss as described above.

IT IS SO ORDERED.

---

employee is injured by reason of the serious and willful misconduct" of the employer or his representative. This increases the damages available to the claimant through workers' compensation, but it does not address the issue of the adequacy of damages as a measure of compensation.